## PELICAN BAY LUMBER CO. v. BLAIR, Commissioner of Internal Revenue. *

Circuit Court of Appeals, Ninth Circuit. February 25, 1929.

Rehearing Denied March 28, 1929.

No. 5530.

*Certiorari denied 49 S. Ct. 512, 73 L. Ed. —.

Clarence Coonan, of San Francisco, Cal., for appellant.

Mabel Walker Willebrandt, Asst. Atty. Gen., and Sewall Key and Millar E. McGilchrist, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, and C. Colden Miller, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

DIETRICH, Circuit Judge. This is an appeal from a judgment of the Board of Tax Appeals, sustaining a disallowance by the Commissioner of a claim of deductible loss arising out of the destruction by fire of a unit of the appellant's lumbering plant at Klamath Falls. Touching the material facts there is no controversy. In 1915, or at least subsequently to March 1, 1913, appellant constructed this unit at a cost of $124,641.25. It was destroyed in September, 1919, at which time its depreciated cost was $98,202.83. Insurance was collected in the amount of $164,-832.64 and there was a salvage of $1,267.68. Electing to rebuild, appellant began construction immediately after the loss was adjusted, and completed the new unit, which was substantially a duplication of the old, in April, 1920, at a total cost of $315,816.95. In its tax return for 1920 it deducted from gross income $123,278.81, which it computed as a loss by deducting from the total cost of the new unit the sum of the accrued depreciation on the old plant, $26,418.42, salvage, $1,267.68, and insurance received, $164,832.-64—a total of $192,538.14. Holding that there was no deductible loss, the Commissioner disposed of the matter by directing a capitalization of $150,964.31, the same being the difference between the cost of the new mill and the amount of the collected insurance. This determination the Board of Tax Appeals approved.[1]

If appellant had elected not to rebuild, there would have been no deductible loss, but, to the contrary, a taxable gain of $67,917.49; that being the difference between the depreciated cost and the insurance collected, plus the salvage of $1,267.68. In other words, the

---

[1] These figures, taken from the printed record, exhibit small, but immaterial discrepancies.

transaction would in effect have amounted to a sale of property costing $98,202.83 at a profit of $67,917.49. And, had it voluntarily sold the mill and built another, the sale profit would have been taxable, and the cost of the new plant would have constituted new capital investment, to be carried as such for taxation purposes. This the Commissioner asserts and appellant concedes. By both sides it is also agreed that in some manner and to some degree appellant's rights and obligations were altered by the fact that it immediately reconstructed the plant, but, as above shown, they differ widely in the conclusion reached. In its application to supposable conditions, the theory of either party sometimes leads to apparently incongruous results, but we must give effect to that one for which there is statutory sanction.

By reference to section 213, section 233 (a) of the Revenue Act of 1918 (40 Stat. 1065, 1077) defines the gross income of corporations to include gains derived from "sales, or dealings in property, * * * or gains or profits and income derived from any source whatever," and by section 202 (a) (1) and (2) it is provided "that for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property" the basis shall be the fair market price or value as of March 1, 1913, for property theretofore acquired, and the cost of acquisition, for property thereafter acquired. By section 234 (a) (4) of the same act it is provided that, in computing the net income of a corporation, there shall be deducted "losses sustained during the taxable year and not compensated for by insurance or otherwise." In no other provision of the act is loss by fire more explicitly referred to, and nowhere in it is replacement of destroyed property made a qualifying consideration, or even mentioned. It would seem to follow that, if adjudged strictly under the provisions of this act, such loss, if any, as appellant sustained by reason of the fire, occurred in the taxable year of 1919, was complete when the property burned in September, and was wholly unaffected by the question whether appellant would or would not rebuild.

Taking that view, and assuming, for the purpose of applying the law to a simple case, that the property was uninsured, manifestly in so far as concerns the ultimate result it would be wholly immaterial whether we adopt as a basis of computation the depreciated original cost of the property or its replacement cost less depreciation; that is, its fair market value at the time of the fire. In ei-

ther case the net deductible loss would be the depreciated cost, for in so far, if at all, as the market value may be in excess thereof, such excess constitutes a common factor of both taxable gain and deductible loss. While it is true that, when there is insurance, cases may be imagined where the proper method of computing net gain or loss under this act is not free from doubt, certainly collected insurance can never be held to enlarge the amount of a deductible loss.

In the view we have taken it would be necessary to hold that under the act of 1918 alone the transaction was closed with the receipt by appellant of the insurance. But because of the immediate replacement it was held open for certain purposes under an administrative regulation and a provision in the Revenue Act of 1921 (42 Stat. 227) which was made retroactive. Apparently, deeming it unfair to the taxpayer to require capitalization of insurance money immediately devoted to the replacement of destroyed property, the Commissioner in 1919 promulgated article 49 of Regulations 45, the material parts of which are as follows:

"In case of property which has been lost or destroyed in whole or in part through fire * * * the amount received by the owner as compensation for the property may show an excess over * * * the cost [after making a proper provision * * * for depreciation to the date of the loss, damage, or transfer]. The transaction is not regarded as completed at this stage, however, if the taxpayer proceeds immediately in good faith to replace the property, * * *. In such case the gain, if any, is measured by the excess of the amount received over the amount actually and reasonably expended to replace or restore the property substantially in kind, exclusive of any expenditure for additions or betterments. * * * Such new or restored property shall not be valued in the accounts of the taxpayer at an amount in excess of the cost * * * [after making proper provision in either case for depreciation to the date of the loss, damage, or transfer] of the original property, plus the cost of any actual additions and betterments."

Whether or not, prior to the passage of the act of 1921, the regulation was valid, it is unnecessary to consider. Neither expressly nor by implication does it purport to warrant the deduction here claimed by appellant. Under the conditions specified it simply relieves the taxpayer from the necessity of accounting for any part of the insurance received and immediately used in replacement, as gain, and, being thus benefited, the tax-

payer must carry forward in his accounts for depreciation purposes the original, rather than the new, property cost. See United States v. Ludey, 274 U. S. 295, 301, 47 S. Ct. 608, 71 L. Ed. 1054. It may be that for like reasons the Commissioner might with equal propriety have extended the rule to cover the computation of gain under other conditions or the computation of deductible losses in cases analogous to the one here presented, but he did not do so, and we are not at liberty to enlarge the scope of the regulation.

By section 234 (a) (14), 42 Stat. 254, 257, it is provided that, "if property [of a corporation] is compulsorily or involuntarily converted into cash or its equivalent as a result of (a) its destruction in whole or in part; * * * and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, * * * then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds." The provision is made to apply to the subject of gains and losses under prior acts. But that it does not authorize the deduction claimed by appellant is too clear for controversy. Manifestly Congress considered an excess of insurance over original cost as a gain and in case of reinvestment a portion of this gain, which otherwise would be taxable as such, is offset by the authorized deduction. In the instant case the entire amount of the insurance collected was reinvested and hence the Commissioner taxed no gain against the appellant.

It may be added that the difference, in ultimate effect, of the two theories, upon appellant's interests, is not so great as the computation for 1920 would seem to imply. In either case, sooner or later appellant is allowed by way of deductions from gross income the entire amount of its net capital investment. Under plaintiff's theory, it would in the year 1920 have such an allowance in a large sum, and thereafter from year to year deduct for depreciation and obsolescence a percentage of the original cost sufficient fully to retire such cost during the period of the estimated useful life of the plant; whereas, under the Commissioner's determination, instead of the new money required for reconstruction being treated as a loss, and deducted as such in 1920, it is added to the amount of the original cost, and thereafter, by annual deductions from gross income to cover depreciation and obsolescence, the entire investment, consisting of the original cost and the new money, is retired in the same period. In the aggregate, therefore, the deductions from gross income are substantially the same.

Being under contract to cut and manufacture into lumber certain timber for the National Forest Service and for the Klamath Indian School, appellant argues that therefore it comes within the rule of Wiener v. Weiss (C. C. A.) 27 F.(2d) 200; but we find no real analogy between the two cases. In that case the taxpayer was a lessee of certain buildings under a 99-year lease, one of the considerations of which was that he should continue to maintain upon the premises buildings of a stipulated fair cost and keep them in "like condition as the same are now in." He was allowed to deduct from gross income moneys to create a fund reasonably necessary to cover the cost of discharging this obligation. We think the allowance was right, whether it be put on the ground of a depreciation loss suffered by a quasi owner or upon the ground that it was a part of the expense of doing business, quite as much as payments of lease money. But here appellant was not bound to replace the destroyed property. Its contracts could have been kept by devoting to the purpose some other unit, or building another mill, or having the work done by some other concern.

The judgment is affirmed.