## SMITH REAL ESTATE CO. v. PAGE, Collector of Internal Revenue.
### No. 2320.

District Court, D. Rhode Island.
July 20, 1932.

Frederick W. Tillinghast and James F. Armstrong (of Hinckley, Allen, Tillinghast, Phillips & Wheeler), both of Providence, R. I., for plaintiff.

Henry M. Boss, Jr., U. S. Atty., of Providence, R. I. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lester L. Gibson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

LETTS, District Judge.

This is an action of assumpsit against the defendant collector of internal revenue for the recovery of certain income taxes alleged to have been wrongfully assessed and collected from the plaintiff for the taxable years of 1924 and 1925.

Two leases for terms of years were executed by the plaintiff in the years 1923 and 1924, respectively. These leases related to certain premises in the city of Providence whereon were located buildings of an aggregate undepreciated cost of $104,714.97. In both cases the leases contained provisions whereby the plaintiff's lessee became obligated to tear down and remove the buildings in question at the lessee's expense and to erect in place thereof other business or mercantile buildings. In each instance, subsequent to the execution of the lease, these commitments were carried out; the old buildings being torn down and new buildings erected. It is stipulated that the buildings so erected had a value at least equal to the buildings demolished and from which at least an equal financial return is derived. The problem presented in respect to each lease and in respect to the tax paid for each of the taxable years is identical.

The sole question of law presented is as follows: If A leases to B for a term of years premises whereon are located buildings having an undepreciated value or cost, which premises were acquired by A without an accompanying intent to immediately raze such buildings, and B undertakes by the terms of the lease to demolish the old and erect new buildings at his own expense, can A for the taxable year in which such demolition is completed deduct from his taxable income as a loss the undepreciated value of such demolished buildings?

Because of the pendency of other cases instituted prior to this suit and apparently involving the same question, I have purposely delayed the disposition of this matter, anticipating that the law would be sufficiently settled so as to obviate the expense to the parties here involved of unnecessary appeal. In part only has my anticipation been fulfilled; certiorari having been denied by the Supreme Court in the only case involving the question as yet presented to it. Anahma Realty Corp. v. Burnet, Commissioner of Internal Revenue, 282 U. S. 854, 51 S. Ct. 31, 75 L. Ed. 756.

The plaintiff has contended with considerable force that under article 142 of Regulations 65 and Regulations 69 the lessor would clearly have been entitled to take such deduction if the buildings had first been demolished and the lease then executed, and that where, as here, the contract for the destruction of the old buildings is embodied as a contractual obligation in the lease itself, the loss should be deductible in the same manner as if the demolition of the buildings had been accomplished by an independent contract between the lessor and some wrecking company. The plaintiff fortifies this argument by the contention that where a new building is erected by the lessee at his cost, the undepreciated value of that new building, as of the termination of the lease, may be reported by the lessor as a taxable profit for the year of its erection. Treasury Decision 4281 (VIII–2CB, p. 244).

The defendant takes the position that what was done was merely the conveyance for

a term of years of the asset which the lessor possessed. In return the lessor received rights under the lease. The acquiescence in the demolition of the old buildings, and the value thereby destroyed, constituted a part of the cost of securing the lease, which capital expenditure should be recovered by the lessor through annual deductions spread over the whole term.

I am rather more impressed by the logic of the plaintiff's contention than that of the defendant, if that logic and reasoning be tested from the point of view of arriving at a conclusion which is consistent with the treatment accorded an owner of real estate who himself, because of the enhanced usefulness of the land, is prompted to demolish the improvements thereon to make way for other improvements which will more completely and profitably utilize the land value. The difficulty is that the question is so affected by regulations and artificial considerations that it has been dealt with, and perhaps of necessity must be, with no great regard for legal logic.

The question here involved has been passed upon by two Circuit Courts of Appeal. In the case of Anahma Realty Corporation v. Commissioner of Internal Revenue, 42 F.(2d) 128, 130, the court in the Second Circuit in an opinion written by Manton, J., held that the demolition of the old buildings, pursuant to the terms of the lease and the erection of new buildings, entailed no loss to the lessor. In that case the court said: "Under the provisions of the lease, appellant's lessee, at its own expense, was obliged to replace the buildings demolished with a new office building which became the property of the appellant at the end of the term. While section 234 (a) of the Revenue Act of 1918 permits the deduction of losses sustained during the taxable years, the appellant did not sustain a loss. Pelican Bay Lumber Co. v. Blair (C. C. A. 1929) 31 F.(2d) 15. The removal of the buildings was a part of the cost of acquiring the lease, and with it came the obligation of the tenant to pay the rent. The cost of acquiring an asset cannot be regarded as deductible as a loss or business expense for the year in which it is paid or incurred. Moreover, section 215 (b) of the Revenue Act of 1918 provides that there may be no deduction for any amount paid out for new buildings or for permanent improvements or betterments to increase the value of any property or estate, and, as the asset acquired was a long-term lease, which provided an obligation to pay stipulated rentals and erect a new building in place of the building demolished, there may be no deduction allowed."

In a recent and as yet unreported opinion the Circuit Court of Appeals for the Ninth Circuit,[*]in the case of Mary C. Young v. Commissioner of Internal Revenue, 59 F. (2d) 691, opinion filed June 24, 1932, followed the holding of the Second Circuit in the Anahma Realty Corporation Case. In the Young Case there was involved a 99-year lease upon property improved by several brick buildings which had been erected only six years. Under the terms of the lease, the lessee was to demolish the existing buildings and erect a new business building. The court in part said: "There can be no question that, where a landowner finds it necessary to remove structures unsuitable for further use, he may have a reduction from gross income for the loss. On the other hand, where he finds it advantageous to remove substantial buildings in order to secure a lease which will result in his having erected on his property a new building, without money outlay on his part for its construction, and to have assured a large rental income for a long term of years, it would seem just and reasonable that the value of the buildings removed be charged as a contribution to the cost of securing his lease, and as a part of the investment then made for that purpose. Under the Commissioner's ruling, the taxpayers will have returned to them the total of that value and the other expenses when the lease term is ended."

Several cases involving questions similar to that with which we are here concerned have, over a period, been passed upon by the Board of Tax Appeals. The decisions of the Board have not been entirely consistent. A review of these determinations, however, indicates that its later holdings are in accord with the result reached by the two Circuit Courts of Appeal, already cited.

It is, however, difficult for me to regard the transaction in these cases as a sacrifice of the old building as part of the purchase price of the lease obtained. It is perfectly patent that what the lessee wants is the land alone. It is equally clear in most of the cases that what has occurred is that the land has become worth more without the old building than with it. From every economic point of view, the old building has already become a liability, rather than an asset. It merely, from the point of view of the application of the tax law, has not as yet been written off as a loss. Such writing off is substantially effected by the negotiation of the long-term lease, under the provisions of which the obsolete building is to be torn down. The bal-

ance of its undepreciated former value is just as much a present capital loss when the lease transaction occurs as it would be a present loss if it had been torn down by the lessor and the vacant land thereafter transferred with an obligation upon the lessee to erect a new building. The result in effect reached by the decisions cited requires a lessor to set off over a period of years, in annual installments, a loss on improvements which he in fact has experienced in toto, against annual rentals upon the enhanced value of the land. This increased value of the land has no relation to the presence of the old building upon it, nor would increment therein ordinarily be reflected in taxable income other than through the increased annual rentals when and as received or accrued. The decisions arrive at a result without sound economic justification which deals differently as between the owner who leases and the owner who himself operates real estate. In the one case in determining loss the value of the improvements and land are commingled; in the other the value of the improvements is separably considered from the value of the land.

Mindful, however, of the artificial character of many of the results arrived at in the application of taxation laws, I am compelled to the conclusion that the results reached by the courts of the Second and Ninth Circuits probably represent the rule which will prevail. Convinced as I am that that is so, although there appears to be no holding upon the point in the First Circuit, I am constrained to follow the result reached in the Anahma Realty Corporation and the Mary C. Young Cases.

Judgment may be entered for the defendant.