**CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. OF CHICAGO et al. v. UNITED STATES.**

**No. M—399.**

Court of Claims.
Feb. 8, 1937.

232

Allen H. Gardner, of Washington, D. C. (Morris, Kix-Miller & Baar, of Washington, D. C., on the brief), for plaintiffs.

J. H. Sheppard, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The plaintiffs bring this suit for the recovery of alleged overpayments of income taxes for the year 1925.

For many years prior to 1923, the plaintiffs were the owners of a tract of land in the business district of Chicago which had buildings thereon. These buildings had been constructed many years prior thereto and were not modern in character. They were rented at that time and an income of approximately $30,000 a year was being derived therefrom. This income was materially less than that which was being received by owners of modern buildings on comparable property and represented a small return on plaintiffs' capital, when considered in relation to the val-

ue of the buildings and the land. These properties being situated in the very heart of the business district of Chicago, the land value had gradually appreciated and the buildings' value had slowly depreciated.

In 1923 the plaintiffs executed a lease for 198 years under the terms of which the lessees undertook to erect a modern fireproof structure on the premises within a definite limit of time from the date of the lease. It was provided that upon the termination of the lease, the building erected thereon was to become the property of the plaintiffs without additional cost. Upon the execution of the existing lease and after the old structures had been vacated, the lessees caused the old buildings to be demolished in 1925 and immediately thereafter began the construction of a new building. It is stipulated the undepreciated cost to plaintiffs of the old buildings was $58,626.34 at the time of demolition. The plaintiffs contend that a loss in that amount was sustained by them when the buildings were destroyed in 1925 and that such loss is deductible in that year under the provision of section 214(a) (4) (5) of the Revenue Act of 1926, 44 Stat. 26, which provides for the deduction of "losses sustained during the taxable year and not compensated for by insurance or otherwise."

The Commissioner of Internal Revenue in reviewing plaintiffs' refund claim treated the undepreciated cost of such buildings as allocable to the cost of the lease and accordingly allowed plaintiffs a deduction for 1925 on the basis that such cost should be amortized over the entire period of the lease.

The question presented here is not a new one. Over a decade ago, the United States Board of Tax Appeals in the case of Charles N. Manning et al. v. Com'r, 7 B.T.A. 286, laid down the principle of treating the undepreciated value of buildings which are destroyed incident to the erection of new buildings under a lease, as a part of the cost of the lease and amortizing such value or cost for the purpose of deduction in a taxable year over the life of the lease. This ruling has been followed consistently by the Board since that time. This same question has been considered on many occasions by the Circuit Courts of Appeal, and in the leading case of Anahma Realty Corporation v.

Commissioner, 42 F.(2d) 128, 130, certiorari denied 282 U.S. 854, 51 S.Ct. 31, 75 L. Ed. 756, it was said:

"Under the provisions of the lease, appellant's lessee, at its own expense, was obliged to replace the buildings demolished with a new office building which became the property of the appellant at the end of the term. While section 234(a) of the Revenue Act of 1918 permits the deduction of losses sustained during the taxable years, the appellant did not sustain a loss. Pelican Bay Lumber Co. v. Blair (C.C.A. 1929) 31 F.(2d) 15. The removal of the buildings was a part of the cost of acquiring the lease, and with it came the obligation of the tenant to pay the rent. The cost of acquiring an asset cannot be regarded as deductible as a loss or business expense for the year in which it is paid or incurred. Moreover, section 215 (b) of the Revenue Act of 1918 provides that there may be no deduction for any amount paid out for new buildings or for permanent improvements or betterments to increase the value of any property or estate, and, as the asset acquired was a long-term lease, which provided an obligation to pay stipulated rentals and erect a new building in place of the building demolished, there may be no deduction allowed. There was necessarily contained in the lease permission on the part of the appellant to permit the lessee to destroy the old buildings. The acquisition of something from which income will be derived in the future has a value in money's worth in the same sense as something which will produce income in præsenti; there was a compensating value for the loss of the buildings which must be recognized as having money's worth. *There was a substitution of assets rather than a loss sustained in the destruction of the buildings.* [Italics ours.]"

See, also, Young v. Commissioner (C. C.A.) 59 F.(2d) 691, certiorari denied, Nov. 7, 1932, 287 U.S. 652, 53 S.Ct. 116. 77 L.Ed. 563; Spinks Realty Company v. Burnet, 61 App.D.C. 321, 62 F.(2d) 860, certiorari denied, Oct. 9, 1933, Spinks Realty Co. v. Com'r, 290 U.S. 636, 54 S. Ct. 53, 78 L.Ed. 553; Smith Real Estate Company v. Page (D.C.) 60 F.(2d) 592, affirmed (C.C.A.) 67 F.(2d) 462.

The plaintiffs recognize the force of these decisions but insist that the instant case can be distinguished on the ground

that at the time of the execution of the lease in 1923, the buildings in question were "devoid of economic value" both to the lessor and the lessees and that therefore it cannot be said that anything of value was given by the lessees for a lease in the form of the value of these buildings. We can find no merit in this contention. The situation of these plaintiffs is essentially the same as that presented in most, if not all, of the cases referred to. At the time of the making of the lease, the plaintiffs were receiving approximately $30,000 a year and also had to pay taxes and insurance. Immediately upon the execution of the lease they received $36,000 a year free of taxes and insurance payments. It is obvious that from the very minute of the execution of the lease the plaintiffs did receive an increase of rental values which was in the nature of a compensation for the property destroyed. The object of the plaintiffs in entering into this lease for a long term of years was the desire to substitute an asset of greater value for an asset of lesser value and that is precisely what they obtained. The action of the Commissioner in respect to this deduction was proper and in line with the principle laid down by the Board of Tax Appeals and the courts.

 Another question arises in the case by reason of the provisions in the will of Lambert Tree which created a trust and the fact that, upon termination of the trust provided in the will, one-half of the trust estate was to go to St. Luke's Hospital, an organization which the parties have stipulated qualifies as a charitable organization within the meaning of section 214 (a) (10) of the Revenue Act of 1926.

When the Commissioner of Internal Revenue originally determined the plaintiffs' tax liability for the year 1925, he made an error in allowing a deduction of only $6,562.62 on the interest of the St. Luke's Hospital in the fund of $44,219.10, set up pursuant to the terms of the will of the testator as a building fund and as a protection against the impairment of the corpus of the trust estate. As the will provided that one-half of the trust corpus was to be distributed to St. Luke's Hospital at the termination of the trust, the sum of $22,109.55, set aside to preserve that property, was properly deductible as a gift to an organization operated exclusively for religious, charitable, scientific, literary, or educational purposes. The defendant

agrees that this amount is correct but sets up as an offset that the Commissioner made another error in his computation which allowed a deduction of the entire amount of depreciation sustained on the trust property in the sum of $31,093.85, whereas he should have allowed only that part of the depreciation which was allocable to the income retained by them and sustained on trust property other than that held for St. Luke's Hospital.

We do not feel that it is necessary to enter into a discussion of this offset as presented by the defendant. The section allowing the charitable deduction, section 219(b) (1) of the Revenue Act of 1926, 44 Stat. 32, provides that the deduction shall be allowed "without limitation." If an adjustment is to be made which affects that allowance, it must be clearly shown that it does not do violence to that section which allows the deduction without limitation. Suffice it to say the Commissioner never made any determination on this point and it was first made in the trial of the case. The evidence produced is not sufficient to bear the burden which the defendant has of sustaining its contention by the preponderance of the evidence.

Judgment will accordingly be entered for the plaintiffs, with entry of judgment suspended pending the submission of computations by the parties in accordance with this opinion. It is so ordered.