Elvira Porrata Doria Vda. de Romanacce, demandante y apelada, *v.* Manuel V. Domenech, sustituído por Rafael Sancho Bonet, como Tesorero de Puerto Rico, demandado y apelante.

Núm. 7196.—*Sometido:* Enero 12, 1937. *Resuelto:* Abril 2, 1937.

*Hon. Procurador General B. Fernández García y T. Torres Pérez, Subprocurador,* abogados del apelante; *J. J. Ortiz Alibrán,* abogado de la apelada.

El Juez Presidente Señor del Toro emitió la opinión del tribunal.

■■ Se trata de un pleito sobre devolución de contribuciones sobre rentas pagadas bajo protesta.

Dueña la demandante desde antes de marzo, 1913, de una finca rústica de ciento treinta cuerdas situada en Salinas, que tuvo siempre arrendada a Luce and.Company, S. en C., la vendió en noviembre de 1927 a su arrendataria por el precio de noventa mil dólares.

En enero, 1932, el Tesorero de Puerto Rico le notificó que debía satisfacer como contribución sobre ingresos $12,113.32 por la ganancia obtenida en dicha venta. No conforme, acudió en alzada ante la Junta de Revisión e Igualamiento. La junta rebajó la contribución a $6,924.62. La pagó la contribuyente bajo protesta y reclamó su devolución ante la Corte de Distrito de San Juan.

Todo gira en este caso alrededor del justo valor de la finca en 1913 y de si ciertas mejoras que hizo la arrendataria en 1920, que quedaron a beneficio de la dueña, deben o no rebajarse del precio de la venta.

La demandante sostuvo que el justo valor de su finca en 1913 era de $75,000 y que del precio de la venta debían rebajarse $9,390, valor de una bomba permanente de regadío instalada por la arrendataria en 1920.

Sostuvo el demandado su actuación basándose en que el verdadero valor de la finca en 1913 era el de $40,000 y en que no era deducible el valor de las mejoras hechas por la arrendataria en la finca en cuestión.

Fué el pleito a juicio y basándose en la prueba practicada fijó la corte el valor de la finca en 1913 en $65,000 y

decidió que el de las mejoras debía rebajarse, ordenando una nueva liquidación de la contribución bajo esas bases, devolviéndose a la demandante lo que resultare habérsele cobrado erróneamente,·con intereses legales a partir de la fecha del cobro.

Apeló el Tesorero de la sentencia para ante este Tribunal. Sostiene en primer término que la demanda no es suficiente porque no contiene alegaciones afirmativas determinantes de que la Junta de Revisión e Igualamiento actuó ilegal y arbitrariamente en la valuación que hizo de la finca.

Hemos examinado la demanda y es a nuestro juicio suficiente. Se interpuso de acuerdo con lo dispuesto en el artículo 76 de la Ley núm. 74 de 1925 (pág. 401), cuyos dos primeros párrafos (pág. 539) son así:

"Las resoluciones de la Junta de Revisión e Igualamiento serán finales sin perjuicio de su reconsideración con arreglo a la ley. El contribuyente deberá satisfacer bajo protesta la contribución que le haya sido impuesta dentro del plazo fijado, pudiendo interponer dentro de los treinta días siguientes al pago bajo protesta, la correspondiente demanda contra el Tesorero de Puerto Rico ante la Corte de Distrito correspondiente.

"Estos pleitos tendrán preferencia en los calendarios de las cortes; todas las defensas que el demandado haya de oponer a la demanda deberán ser formuladas a la vez en un solo escrito y el juez las resolverá en una sola vista por orden estricto de prelación y el juicio se señalará rápidamente para su resolución definitiva."

¿Estuvo justificada la corte de distrito al fijar el valor de la finca en 1913 en $65,000 cuando la junta lo fijó en $40,000?

El debate en cuanto al justo valor de la finca en 1913 se planteó por la demandante en la siguiente forma: la fijación del valor de la finca por la junta en $40,000 fué arbitraria. La finca valía $75,000.

Para probar lo alegado presentó la declaración de un testigo que dijo en substancia que cada cuerda de la finca valía quinientos dólares. El demandado no impugnó esa declaración. No presentó prueba alguna sobre el valor de la finca. Se atuvo, parece, a la actuación de la junta, y la

corte de distrito expresando que la declaración del testigo de la demandante le merecía entero crédito, fijó el valor en $65,000, o sea $25,000 más que la junta y $10,000 menos que la demandante.

Sostiene el demandado que tratándose de una conclusión de hecho a la que llegara la junta a virtud del examen de evidencia y en el ejercicio de sus facultades, dicha conclusión no puede ser alterada por la corte de distrito.

Creemos que al establecer el legislador el recurso que otorgara por la sección 76 de la Ley núm. 74 de 1925, confirió a las cortes la necesaria jurisdicción para investigar y decidir todas las cuestiones que dentro del mismo le fueran debidamente sometidas. Y una de esas cuestiones lo es sin duda el valor de una propiedad cuando ese valor sirve como en este caso de base para la imposición de la contribución.

La finca de que aquí se trata estaba tasada para el año de 1913 a los efectos del pago de contribuciones en $19,000 y ése fué el valor que tomó como base el Tesorero para imponer la contribución. Al recurrir la contribuyente en alzada a la junta, este organismo de acuerdo con la ley que prescribe que la base para el cálculo debe ser el costo o el justo valor de la propiedad en el mercado en marzo 1 de 1913 (véanse las secciones 5 y 6 de la ley núm. 74 de 1925), fijó el valor de la finca en $40,000, o sea a razón de $300 la cuerda.

¿Qué procedimiento siguió la junta? No lo sabemos. ¿En qué prueba basó su conclusión? Repetidamente se insiste por el demandado en que la evidencia que se presentó en la corte fué la misma que se sometió a la junta, pero nada hemos encontrado en los autos que así lo demuestre. Creemos que en un caso de esta naturaleza el demandado debe aportar la prueba necesaria que permita a la corte de distrito dictar la sentencia que proceda en justicia. De otra suerte, si el demandado no impugna la evidencia presentada por la parte demandante, no puede quejarse de que la corte diga como dijo en este caso en su opinión:

" . . . El valor en el mercado de una propiedad en una fecha determinada, es una cuestión de hecho a establecerse por el contribuyente mediante evidencia razonable y adecuada. Así lo reconoce el propio reglamento del Tesorero cuando expresa en su artículo 32 al fijar las bases para determinar la ganancia o pérdida de una venta que:

> " 'Cuál fuese el justo valor en el mercado de una propiedad en marzo 1 de 1913, es una cuestión de hecho para ser establecida por evidencia competente. (What the fair market value of property was on March 1, 1913, is a question of fact to be established by competent evidence).'

"En cuanto a la definición del término 'justo valor en el mercado' (fair market value), ambas partes están de acuerdo en la definición que del término aparece en la obra 'Federal Income Taxation', por Joseph J. Klein, edición 1929, y a la página 805. Dice así esta definición:

> " 'Es el precio que puede obtenerse por una propiedad si fuere vendida por un vendedor voluntario a un comprador voluntario, teniendo ambos conocimiento de las condiciones del mercado y bajo condiciones normales y sin compulsión o necesidad de ninguna de las partes.'

"La alegación de que la finca 'Melanía' tenía el 1 de marzo de 1913 un justo valor en el mercado, no es caprichosa o arbitraria, sino que ha quedado establecida por evidencia competente e incontrovertida. Es, a virtud de toda esta evidencia, justa y razonablemente apreciada, que nosotros, conservadores aún en nuestra apreciación, declaramos que el justo valor en el mercado de la finca 'Melanía', en marzo 1, 1913, era el de $65,000. No sabemos qué base tuvo la Junta de Revisión e Igualamiento para determinar en $40,000 el valor de la finca. Ninguna prueba se nos ofreció a este efecto. No podemos, pues, dejar de considerar como incontrovertida la prueba ofrecida por la demandante. . . "

Hemos examinado la declaración que sirvió de base a la corte para dictar su sentencia y a nuestro juicio la sostiene.

▇ La otra cuestión envuelta, la de las mejoras, ofrece algunas dudas porque en verdad no fueron hechas dichas mejoras por la dueña a su costo, sino por la arrendataria. Esas dudas desaparecen tras un detenido estudio. Los razonamientos que contiene la opinión de la corte de distrito

para basar la conclusión a que llegara nos parecen persuasivos, y se aprueban. Son así:

"La segunda cuestión a considerar en este pleito es si el valor de las mejoras construídas por la arrendataria deben agregarse al valor en el mercado en 1913. El apartado *b* de la sección 5 de la Ley de Contribuciones sobre Ingresos, supra, dice:

"'Al computarse el montante de ganancia o pérdida de acuerdo con la subdivisión (*a*) deberá hacerse el reajuste adecuado de (1) cualquier gasto que se pueda propiamente cargar a la cuenta de capital, y (2) cualquier partida de pérdida, merma, desgaste y deterioro, desuso, amortización o agotamiento, que se pueda cargar propiamente con respecto a dicha propiedad.'

"El reglamento del Tesorero al referirse a este apartado dice:

"'Al computar el montante de las ganancias o pérdidas, sin embargo, el costo u otras bases de la propiedad debe ser aumentado por el costo de las mejoras hechas a la propiedad desde la fecha básica...' Art. 20.

"Considerando estas disposiciones terminantes, no hay duda de que las mejoras deben agregarse al valor básico en 1 de marzo de 1913. Ésta es tal vez la cuestión más importante, o que nosotros hemos creído más importante, y a la que mayor cuidado y estudio hemos dedicado.

"Alega el demandado que como la demandante no hizo las mejoras ni invirtió dinero en su construcción, no tiene derecho a este beneficio; pero olvida que aceptó mediante una estipulación que las mejoras permanentes que la arrendataria hiciera en la finca quedarían a beneficio de la arrendadora. Si ella, la arrendadora, tenía a la postre que tomar posesión de la finca arrendada y nunca se desprendió del dominio de la misma hasta que no se hizo la transacción de venta, mientras la finca estuvo arrendada, la demandante fué siempre la dueña de las mejoras. Klein, en su obra antes citada, trata esta cuestión en la pág. 320. Cita la actuación de la Junta del Negociado de Rentas de los Estados Unidos, en el sentido de que el dueño de una propiedad arrendada no debía informar en cuanto a las mejoras hechas en dicha propiedad hasta que entrase en posesión de la propiedad, una vez vencido el arrendamiento, y después manifiesta que esta regla estuvo en vigor hasta que dos tribunales federales tuvieron ocasión de resolver el problema. En ambos casos los

tribunales revocaron la actuación del Comisionado de Rentas que trató de tasar el ingreso de los dueños de la propiedad, en cuanto a mejoras se refiere, por la fecha en que ellos entraron en posesión de tales mejoras, y cita los dos casos de *Miller* v. *Gearin,* 258 Fed. 225, y *Cryan* v. *Wardell,* 263 Fed. 248. En el primero de estos casos se dice lo siguiente:

" 'La arrendadora no adquirió en 1916 otra cosa que la posesión de aquello que por muchos años había sido suyo. La posesión así adquirida no fué un ingreso. No constituyó una ganancia, sino una pérdida. Asumiendo que el edificio fuera un ingreso derivado del uso de la propiedad, a nuestro juicio es claro que el tiempo en que se "derivó" fué el momento en que el edificio completo se agregó al inmueble y aumentó su valor. En ese momento representó un pago anticipado a la arrendadora de parte del alquiler, a distribuir durante un período de 23 años. El contrato de arrendamiento disponía que el dominio de todos los edificios construídos y mejoras hechas a la propiedad pasarían a la arrendadora inmediatamente que se hicieran, sujetos a las disposiciones del contrato.' *Miller* v. *Gearin,* 258 Fed. 225.

"Y en el segundo se confirma la doctrina anterior en la siguiente forma:

" ' . . . En el momento en que se levantó el edificio, el que según los términos del contrato de arrendamiento se convertiría y continuaría siendo parte integrante del terreno sobre el cual se construía, el título del mismo pasó tan completamente a la demandante como si se hubiese fabricado por ella misma.' *Cryan* v. *Wardell,* 263 Fed. 248, 249.

"De modo, pues, de acuerdo con la anterior jurisprudencia, las mejoras participan del carácter de rentas y su título pasa al propietario de la finca arrendada como construídas por él mismo. No es necesario mayor esfuerzo para decidir la cuestión a favor de la parte demandante."

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.