Rafael Buscaglia, Tesorero de Puerto Rico, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Antonio Caubet, interventor.

Antonio Caubet, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Tesorero de Puerto Rico, interventor.

Núms. 186–187.—*Sometidos:* Febrero 1, 1949. *Resueltos:* Abril 18, 1949.

Hon. *Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en el alegato) y *Elmer Toro Lucchetti, Procurador General Auxiliar,* abogados del Tesorero de Puerto Rico; *J. J. Ortiz Alibrán,* abogado de Antonio Caubet.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El 12 de agosto de 1905 Antonio Caubet y Gervasio Fernández compraron como comuneros el edificio marcado con el núm. 32 de la Calle Allen de San Juan, por la suma de $18,750. Inmediatamente se lo arrendaron a la vendedora, Sucrs. de A. Mayol & Cía. El 7 de junio de 1912 se renovó el contrato, disponiendo éste por primera vez lo siguiente:

"5ta.—Los arrendatarios podrán hacer obras en la casa, siempre que no perjudiquen a la construcción, ni la hagan desmerecer de valor, y dichas obras, como cualquier otra mejora, al vencerse el

arrendamiento, quedarán a beneficio de los dueños de la finca, sin que hayan de indemnizar ni pagar a los arrendatarios cosa alguna ni cantidad.''

En algún momento durante el año 1913, después del 1 de marzo de dicho año, la arrendataria destruyó la casa de ladrillos que enclavaba en la propiedad, y erigió un edificio de tres pisos de concreto armado a un costo de $69,500. De esta suma, Caubet y su comunero pagaron a la arrendataria $30,000. En 1942 la arrendataria le compró a los condueños dicha propiedad por la suma de $60,000.

En su planilla de ingresos para 1942 Caubet dedujo cierta cantidad como pérdida en la venta de la propiedad. El Tesorero le notificó una deficiencia basada en que la transacción le produjo a los condueños una ganancia de $38,790. El Tribunal de Contribuciones resolvió que la ganancia ascendía a $26,906, la mitad de la cual, es decir $13,453, le correspondía a Caubet. Expedimos los autos en las solicitudes de *certiorari* radicadas por Caubet y el Tesorero.

Examinaremos primeramente la petición del contribuyente. En vista de los artículos 15(a), 5(a), 5(b), 7(a) y 7(b) de la Ley de Contribuciones sobre Ingresos,[1] el

(1)Artículo 15(a):

''El término 'ingreso bruto' incluye ganancias, beneficios o ingresos derivados de . . . negocios, comercio, o ventas, u operaciones en propiedad, bien sea mueble o inmueble . . . ''

Artículo 5(a):

''Excepto lo que más adelante se provee en esta sección, la ganancia derivada de la venta, u otra disposición de la propiedad, será el excedente de la cantidad realizada en dicha venta o disposición sobre la base que establece la subdivisión (a) o (b) de la sección 7 . . . ''

Artículo 5(b):

''Al computarse el montante de ganancia o pérdida de acuerdo con la subdivisión (a) deberá hacerse el reajuste adecuado de (1) cualquier gasto que se pueda propiamente cargar a la cuenta de capital, y (2) cualquier partida de pérdida, merma, desgaste y deterioro, desuso, amortización o agotamiento, que se pueda cargar propiamente con respecto a dicha propiedad.''

Artículo 7(a):

''La base para determinar la ganancia o pérdida derivada de la venta u otra disposición de la propiedad adquirida después de febrero 28 de 1913, será el costo de dicha propiedad . . . ''

Tribunal de Contribuciones determinó la ganancia en la siguiente forma:

| | | |
|---|---:|---:|
| Precio de venta del edificio | | $60,000. |
| Valor del solar a marzo 1°., 1913 | $18,000.(²) | |
| Valor de la vieja casa a marzo 1°., 1913 | 5,000.(³) | |
| Costo del edificio a los comuneros | 30,000. | |
| | $53,000. | |
| Menos: | | |
| Depreciación | 19,906. | |
| | | 33,094. |
| Ganancia | | $26,906. |

El primer error señalado se dirige a la negativa del Tribunal de Contribuciones a considerar como parte del costo de la propiedad toda la cantidad de $69,500, invertida por Sucrs. de A. Mayol & Cía. en 1913 en la construcción del nuevo edificio. La teoría del contribuyente es que dicha suma fué invertida en mejoras provistas en la quinta cláusula del contrato de arrendamiento.

El Tribunal de Contribuciones rechazó esta teoría porque resolvió que bajo las circunstancias concurrentes, las partes habían variado el arrendamiento y habían efectuado un contrato diferente. Concluyó que los $69,500 no fueron gastados en mejoras a tenor con la cláusula quinta del arrendamiento. Por el contrario, llegó a la conclusión de que se había efectuado un reemplazo provechoso (*supersession*) más bien que una mejora en la propiedad.

Convenimos con el Tribunal de Contribuciones en que la arrendataria no efectuó mejoras en la propiedad. Ésta la

Artículo 7(*b*):

La base para determinar la ganancia o pérdida derivada de la venta u otra enajenación de la propiedad adquirida antes de marzo 1 de 1913 será (A) el costo de dicha propiedad . . . o (B) el justo valor de dicha propiedad en el mercado en marzo 1 de 1913, o la que fuere mayor. . . . ''

(²)En vez de $8,262 que fué la cifra fijada por el Tesorero.

(³)Esta partida fué omitida por el Tesorero. Su inclusión es el único error señalado por el Tesorero en su petición de certiorari, discutida más adelante.

destruyó completamente y construyó un nuevo edificio. Las partes sabían que esto no estaba incluído en la cláusula quinta del arrendamiento. Dicha cláusula disponía que el arrendador no venía obligado a indemnizar a la arrendataria por las mejoras. Eso no obstante, Caubet y su comunero pagaron a la arrendataria la suma de $30,000 porque ésta construyó un nuevo edificio. El Tribunal de Contribuciones correctamente incluyó la cantidad de $30,000 más bien que todos los $69,500, como parte del costo del edificio. Véanse los artículos 1433, 1447, 294 et seq., Código Civil, ed. de 1930.

El contribuyente descansa en Porrata v. Domenech, Tes., 51 D.P.R. 215. En él resolvimos que el valor de una bomba de regadío instalada por la arrendataria debía incluirse como parte del costo de la finca al arrendador cuando éste la vendió, a tenor con una cláusula en el contrato de arrendamiento al efecto de que las mejoras permanentes quedarían a beneficio del arrendador.

El caso de Porrata es distinguible por dos motivos. Primeramente, el Tribunal de Contribuciones resolvió, y convenimos con él, en que una disposición similar en el arrendamiento aquí envuelto había sido sustituída por un nuevo convenio, aparentemente oral, de que habría una nueva construcción más bien que mejoras y que los dueños contribuirían en parte al costo de la misma. En segundo lugar, los arrendadores de hecho pagaron $30,000 con el fin de adquirir el título al nuevo edificio.

Además, la Corte Suprema de los Estados Unidos en Helvering v. Bruun, 309 U.S. 461, revocó los dos casos de cortes inferiores en los cuales se basó este Tribunal al resolver el caso de Porrata. El caso de Bruun envolvía un arrendador que le arrendó a un inquilino cierta propiedad. Éste luego destruyó el edificio y construyó uno nuevo sobre el solar. Más tarde, el inquilino no pudo pagar el canon, se dió por terminado el arrendamiento, y el arrendador readqui-

rió el solar en donde se había construído el nuevo edificio. Se resolvió que el arrendador tenía que pagar contribuciones sobre el valor en el mercado del edificio, como ingreso en el año en que readquirió la propiedad. Véase también, 2 Mertens, *Law of Federal Income Taxation*, artículo 11.15, pág. 68 *et seq.*([4])

Visto lo anterior, el Tribunal de Contribuciones correctamente resolvió que al determinar la ganancia de Caubet para 1942, debía considerarse como parte del costo de la propiedad la suma de $30,000, de hecho pagada por los condueños, y no todos los $69,500.

█ Los errores segundo y tercero se basan en supuestos errores del Tribunal de Contribuciones al apreciar la evidencia. Toda vez que el contribuyente no ha elevado la transcripción de evidencia a este Tribunal, no estamos autorizados para considerar estos errores.([5])

█ Pasemos ahora al recurso del Tesorero. El único error señalado es que el Tribunal de Contribuciones cometió error al incluir la suma de $5,000, valor de la casa destruída, como parte del costo del nuevo edificio, toda vez que se trataba de una propiedad adquirida para arrendarse y no para destruirse.

El Tesorero se basa en el artículo 118 del Reglamento núm. 1 de Contribuciones sobre Ingresos, que en sustancia equivale al artículo 156 del Reglamento 33 de la Ley Federal.

---

([4]) El Congreso enmendó el estatuto Federal con posterioridad al caso de *Bruun.* 2 Mertens, supra, 1948 *Supplement,* sec. 11.15, pág. 27. Nuestro estatuto permanece sin sufrir cambio alguno.

Notamos que en este caso específico, no hay problema con respecto a si la ganancia está sujeta a contribución a la fecha en que se termina el arrendamiento o cuando el arrendador vende la propiedad. Véase *Helvering* v. *Bruun,* supra. Aquí ambos eventos ocurrieron a la vez.

([5]) El segundo error es que el Tribunal de Contribuciones arbitrariamente le fijó un valor de $5,000 al viejo edificio para el 1 de marzo de 1913, mientras que la prueba demostró que para aquel entonces valía $20,000. El tercer error es que el Tribunal de Contribuciones ignoró hechos probados demostrativos de que el contribuyente ya había pagado contribuciones por las mejoras realizadas hasta el montante de $8,045.

La mejor contestación a esta contención del Tesorero se encuentra en el caso de *Commissioner of Internal Rev.* v. *Appleby's Estate*, 123 F.2d 700, 702 (C.C.A. 2, 1941):

"La segunda parte del argumento del comisionado descansa en el artículo 156 del Reglamento 33, que prescribe que 'cuando una corporación' [enmendado en revisiones posteriores del reglamento para que dijera 'cuando un contribuyente'] 'compra' bienes inmuebles mejorados con un edificio, 'que destruye con miras a construir otro edificio,' no se le reconocerá pérdida deducible alguna con motivo de la demolición del edificio anterior, pero se considerará que 'el valor de la propiedad inmueble, aparte de las mejoras viejas, es igual al costo del solar y los edificios.' La contención es que estas disposiciones excluyen por implicación los casos en que el contribuyente no tiene tal intención a la fecha de la compra o adquiere la propiedad en alguna forma que no sea la compra. No se nos ha citado caso alguno que haya aceptado esta interpretación del reglamento, y por lo menos en un caso dicha interpretación ha sido repudiada. *Young* v. *Commissioner*, 9 Cir., 59 F.2d 691, 692. Véase, también, *Anahma Realty Corp.* v. *Commissioner*, 2 Cir., 42 F.2d 128. El reglamento bajo discusión expone la doctrina a ser aplicada en una situación corriente, es decir, la compra de bienes inmuebles mejorados con la intención de destruir las viejas mejoras y edificar un nuevo edificio. No sería razonable resolver que el establecimiento de una doctrina para este caso único excluye la aplicación de una doctrina similar a los casos en que se decidió destruir y edificar de nuevo después de adquirirse la propiedad. Se permiten las pérdidas solamente cuando resultan de una transacción cerrada. Si se destruye un edificio porque ya no se puede usar, la transacción con respecto al edificio se cierra y el contribuyente puede deducir su pérdida; pero si el propósito de la destrucción es hacer sitio para una nueva estructura, el resultado es meramente sustituir un activo de poco valor por uno que vale más, y la pérdida proveniente de la destrucción puede razonablemente considerarse como parte del costo del nuevo activo . . . "(6)

(6)En el caso de *López de la Rosa* v. *Tribunal de Contribuciones*, 66 D.P.R. 334, estaba envuelta una cuestión diferente. Allí el punto era si un contribuyente que destruyó un edificio podía deducir su valor como pérdida en el año en que se destruyó. Resolvimos que por haberlo destruído debido a su estado ruinoso y no para fines de construir un edificio nuevo, no era de aplicación el artículo 118 y el contribuyente podía deducir la pérdida durante ese año. El caso de *López de la Rosa* nada tiene que ver con el presente.

*La decisión del Tribunal de Contribuciones será confirmada.*

El Juez Asociado Sr. Negrón Fernández no intervino.