## LIBERTY BAKING CO. v. HEINER, Internal Revenue Collector.

Circuit Court of .Appeals, Third Circuit.
January 23, 1930.

No. 4217.

James Walton, of Pittsburgh, Pa., for appellant.

John D. Meyer, U. S. Atty., and J. A. McCann, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa. (C. M. Charest, Gen. Counsel, and F. F. Toomey, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before BUFFINGTON, Circuit Judge, and THOMSON and AVIS, District Judges.

THOMSON, District Judge. The Liberty Baking Company brings this suit against D. B. Heiner, collector, to recover back $16,418.24 income and profits taxes for the year 1918. The collector having held the company liable, an appeal was taken to the Board of Tax Appeals, which was heard in 1926, the Board sustaining the ruling of the collector. The appeal to the Board being filed before the Act of 1926, the plaintiff, instead of appealing directly to this court, elected to pay the taxes and sue in the United States District Court, under section 283(b) of the Revenue Act of 1926 (26 USCA § 1064(b). The case was tried without a jury, and the court, after making special findings, entered judgment thereon for the defendant. The case is before us on appeal from that decision.

The first question involves the statute of limitations. If that statute does not apply, the next question is:

Was the plaintiff entitled, in computing its taxable income for the year 1918, to deduct—

(a) Loss of $11,000 alleged to have resulted from the demolition of certain buildings which were razed in order to make way for plant extensions?

(b) Loss of $10,000 alleged to have resulted from the worthlessness of a flour-milling process.

(c) An alleged loss of $5,895.45, being a part of the cost of certain bread wrappers which were too small for the bread loaves manufactured by the plaintiff after the war.

The statute of limitations would have been a bar in this case, except for two waiv-

ers, executed by the plaintiff—one dated February 4, 1924, extending the time for the assessment and collection of the 1918 taxes for one year after the expiration of the statutory period of limitations, and a second waiver dated November 29, 1924, which covered not only the year 1918, but also the year 1919.

While these waivers have been attacked by the defendant as invalid, we agree with the court that there does not appear any substantial objection to their validity. The extension of time seems to have been of marked advantage to the plaintiff, and was followed by very substantial reductions in the amounts claimed against it.

The first waiver was signed by the president and secretary of the plaintiff company with the corporate seal annexed. In it, the plaintiff consented to the "determination, assessment and collection" of any taxes for the year 1918, for "one year after the expiration of the statutory period of limitations."

By the second waiver, the plaintiff consented to the extension of the period for "determination, assessment and collection" of taxes for the years 1918 and 1919, for one year "after the expiration of the statutory period of limitations within which assessments of taxes may be made for the year or years mentioned."

The court below held as untenable the objection that the waivers were not properly executed by the plaintiff or by the Commissioner of Internal Revenue; that the signing of such a waiver, by one or more executive officers, with the corporate seal affixed, given as it was to secure further consideration of corporate tax liability, comes within the ordinary powers of corporate officers; that, as to the acceptance by the Commissioner, waivers being filed in his office bearing what purports to be his signature and acted upon by that officer, giving repeated consideration to the plaintiff's claims for further reductions, which resulted in withholding collections while the plaintiff's books were being examined, these facts preclude the plaintiff from now controverting the validity of the waivers. The objection that the waivers were without consideration cannot be sustained. The statute requires nothing but "consent," and it would be unconscionable to allow the taxpayer to afterwards repudiate a consent upon which the Commissioner has acted and relied. It appears that, in the circumstances, the execution of the waivers was a necessary incident to the securing of further consideration of the plaintiff's tax liability.

We conclude that there was no error in sustaining the validity of the waivers.

As to the three items upon which plaintiff claims a loss:

In November, 1916, plaintiff bought additional ground adjoining its place of business for the future extension of its plant. There were three buildings on this land valued at $11,000, which plaintiff tore down in 1918 and 1919, in order to make room for the contemplated extensions to its plant. Plaintiff claimed this item as a deductible loss in 1918.

The court in its findings and conclusions held that this item was not a deductible loss. The court found that the property, as it stood, was bought for the purpose of enlarging the plant. That there was no loss sustained because the demolition which was in contemplation at the time the property was bought. The court concluded that this situation was directly covered by article 142 of Regulation 45, to the effect that, when a taxpayer buys real estate upon which is located a building which he proceeds to raze in view of erecting another, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expenses on account of the cost of removal; that the value of the real estate, exclusive of old improvements, is presumably equal to the purchase price of the land and building, plus the cost of removal of the old. While the razing of the buildings in this case was somewhat deferred, we think the conclusion of the court was correct.

On October 24, 1917, plaintiff made an agreement with a milling company for an exclusive license to use the Herendeen process for treating flour. The consideration agreed upon was $10,000, of which $2,500 was paid in 1917. The agreement contained a provision that the plaintiff might process flour at its own plant or send it to the mills of the Herendeen Company at Danville, Ill. In 1918, the plaintiff had its flour processed at Danville, but found the process unsatisfactory, and in December, 1918, charged as a loss the entire $10,000. Later, in 1919, this charge was re-entered on the books of the company, and equipment was installed at its plant at Pittsburgh for the process, which was used there during the year 1919. This process was not

satisfactory; the machiner
tled in 1920. The Commi
this item as a loss in 1919,

The court, in finding w
sioner, said: "There had
the process by the plaintiff
for the first time it installe
machinery to make a test
The accountants of the p
this item back on the books
after it had been claimed
There was no error in so d

The court was perhaps
ing that there had been
process until 1919. It seem
ess was tried and found u
Danville in 1918, and in D
year plaintiff charged the e
$10,000 as a loss. Had th
there, the plaintiff would
tled to the loss as claimed.
end there. Evidently no
the result of their 1918 e
charge was re-entered on
new equipment installed
Pittsburgh, which was used
year 1919. They were e
determine whether, in fact,
good or bad, and in 1919, a
mentation, they concluded
worthless and abandoned
seem that this was the tim
ter was definitely determine
definitely established. We
allowing credit for the loss

In the year 1918, the plaintiff pur-
chased a quantity of paper bread loaf
wrappers for use on loaves of the size pre-
scribed by the United States Food Admin-
istrator during the war. After the Armis-
tice in November, 1918, the food regula-
tions were canceled. The plaintiff then en-
larged the size of its loaf, with the result
that the wrappers bought in 1918 were too
small. As a result, the plaintiff used two
wrappers on each loaf for the balance of
the year 1918 and extending into the year
1919, when it procured other wrappers and
abandoned those bought in 1918. The
plaintiff charged off 50 per cent. of the
cost of the wrappers on hand December 31,
1918, as a loss, which the Commissioner dis-
allowed for the tax year 1918. Such loss
from the abandonment of unused wrappers
was allowed as a deduction in 1919. The
court was of opinion that there was no de-
ductible loss under the statute allowable
for either the year 1918 or 1919, and held
there was no shrinkage in inventory. The

rt held, however, that, if there was a de-
tible loss, it was in the year 1919, as
Commissioner had allowed. With this
clusion we cannot agree. The wrappers
re purchased of the size prescribed by
government. Later the food regulations
e canceled, which was a matter far be-
d the control of the plaintiff. It was
ural that the normal size of the loaf
reafter should govern, and a clear loss
ulted to the plaintiff by reason of the
nge of conditions. It would seem to us
rect for the plaintiff to charge off 50
cent. of the cost of the wrappers on
d December 31, 1918, as a loss which it
l sustained in that year.

To the additional loss involved in this
n, the plaintiff should be entitled to cred-
and to that extent the conclusion of the
rt should be modified. If the govern-
t will file a remittitur as to the amount
this item of loss, the judgment will in
respects be affirmed.