## YOUNG v. COMMISSIONER OF INTERNAL REVENUE.

### MOORE v. SAME.

### No. 6427.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1932.

M. F. Mitchell and George G. Witter, both of Los Angeles, Cal. (Theodore B. Benson, of Washington, D. C., of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John G. Remey, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and W. Frank Gibbs, Sp. Atty., Bureau of

Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges and JAMES, District Judge.

JAMES, District Judge.

Mary C. Young and Mary Young Moore, mother and daughter, applied to the Federal Board of Tax Appeals for a redetermination of income tax amounts assessed against them by the Commissioner of Internal Revenue for the years 1924 and 1925. The Board sustained the Commissioner, and the matter is brought here on petition for review. The claims were consolidated for hearing and determination by the Board, and the review is presented in the same form.

Petitioners were joint owners in equal interests of certain real property located on one of the principal business streets in the city of Los Angeles. In the year 1924 they entered into a 99-year lease covering the property, under which the lessee was to erect a business building. Monthly rental of $10,000 was to be paid from October 1, 1924, to June 30, 1926, and from thence on for the remainder of the term a rental of $20,000 per month was to be paid. At the time of the making of the lease, there were on the property several brick buildings which had been erected by the owners approximately six years prior thereto. These buildings were demolished to make way for the new structure. The agreed depreciation cost in 1924 of the old structures was $42,215. No salvage resulted from their demolition. Incidental expenses were incurred by the petitioners in the matter of securing the 99-year lease, as follows: Real estate commission, $50,500; attorney's fees, $5,500; certificate of title charges, $4,502.85. One-half of the commission amount was paid in the year 1924, and the remaining one-half in 1925.

The taxpayers kept their books and rendered income tax returns on the cash receipts and disbursements basis. They claimed the right to deduct from gross income amounts in 1924 the full depreciated cost of the buildings which were destroyed, and to deduct in the years 1924 and 1925 the payments made on account of broker's commission, attorney's fees, and title certificate cost. The Commissioner held that none of the items were deductible, but that they should be considered as expense incurred in the procurement of the 99-year lease, and the total amount amortized over the lease term. Taking the years which the lease had to run, he calculated that each of the petitioners would be entitled to a deduction each year in the sum of $513.59.

The determination of the controversy seems to depend altogether on the solution of the question as to whether, by the acquisition of the long-term lease, the lessors added to their assets, or substituted property for another form of capital assets. If either of these conditions resulted, then the cost of working out the change would be an expense to be classed as a contribution to assets, and would not be immediately deductible as an expense charge against the income account. By section 215(a), paragraph (2), Revenue Act 1924, 43 Stat. 253, 271, 26 USCA § 956(a) (2), it is provided that no deduction shall be made for "any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

There is nothing shown in the record as to the size, character, or cost of the new buildings to be erected by the lessee. There is nothing shown as to the amount of income which had theretofore been received from the property. We can well assume that pecuniary advantage and benefit accrued to the lessors under the lease. The buildings demolished were not old. They had been in existence for a comparatively few years; they had depreciated from the original cost of $50,000 by the amount only of $7,785.

Provisions of the Treasury regulations (65, art. 142), wherein it is declared that, when a taxpayer buys real estate upon which is located a building which he proceeds to raze with intent to erect another building, no loss for the buildings destroyed shall be claimed as deductible, but that the presumption will be that the property acquired, exclusive of old improvements, equals the purchase price paid, declare an administrative practice rule of binding effect, Liberty Baking Co. v. Heiner, 37 F.(2d) 703 (C. C. A. 3). But that rule does not by implication exclude cases where the taxpayer has not the intent at the time he purchases improved property to demolish existing buildings. Each case is left to be judged by its own facts. And the preliminary provisions of the regulations (65, article 142), which allow deductions for the voluntary removal or demolition of old buildings, will not control a situation like that which is here presented. There can be no question that, where a landowner finds it necessary to remove structures unsuitable for further use, he may have a reduction from gross income for the loss. On

the other hand, where he finds it advantageous to remove substantial buildings in order to secure a lease which will result in his having erected on his property a new building, without money outlay on his part for its construction, and to have assured a large rental income for a long term of years, it would seem just and reasonable that the value of the buildings removed be charged as a contribution to the cost of securing his lease, and as a part of the investment then made for that purpose. Under the Commissioner's ruling, the taxpayers will have returned to them the total of that value and the other expenses when the lease term is ended. (See Regulations 65, arts. 161–164.)

The decisions of the Board of Tax Appeals on this subject have not been consistent. Its later holdings have agreed with the order which the Commissioner entered in this case, although a former decision, made in the case of Robert McNeill v. Com'r, 16 B. T. A. 479, announced an opposite conclusion.

The Circuit Courts of Appeals have sustained the Commissioner where facts similar to those presented here were shown. In Anahma Realty Corporation v. Commissioner, etc., 42 F.(2d) 128 (C. C. A. 2), it appeared that the corporation taxpayer in January of 1920 acquired certain real property on which there were buildings under lease to tenants. It continued to let the buildings to such tenants and collect rentals until May, 1920. It then entered into a lease for the term of twenty-one years with a corporation, under the terms of which it was agreed that the old buildings should be demolished and that the new lessee should erect an office building on the property. The old buildings at the time were assessed for local taxation at a valuation of $204,000. The taxpayer claimed a deduction on account of loss as for the value of the buildings. The deduction was disallowed. The ruling was affirmed. The court in its opinion said that there was compensating value (the lease) for the loss of the buildings; that the cost of acquiring an asset was not deductible as a business expense for the year in which it was paid or incurred.

In Central Bank Block Association v. Commissioner, 57 F.(2d) 5 (C. C. A. 5), the taxpayer had made a lease of property for a period of fifty years. He paid a large commission amount to an agent for negotiating the lease, and sought to deduct the installments as paid from gross income for appropriate years. The Commissioner rejected the claim in its total, but apportioned one-fiftieth of the amount as an allowance against each year's income. The Circuit Court of Appeals agreed with the taxing officers, holding that the expense for the account referred to was not deductible as ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.

In Bonwit Teller & Co., 53 F.(2d) 381 (C. C. A. 2), the court considered a like claim for deduction where a long-term lease had been secured. The court said that the transaction in effect was an exchange of the leasehold estate for the lessee's obligations. A brokerage fee paid for negotiating the lease was held not deductible from gross income.

No reason is found to distinguish the holdings of the courts as between the case of a lessee who subleases and a case where the owner of the land enters into the lease with the original or first tenant.

The orders of the Board of Tax Appeals are affirmed.