CONCORD CAB CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BEE CAB CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ANCHOR CAB CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31633, 31634, 31635. Promulagted September 15, 1952.

*Benjamin Grund, C. P. A.* and *L. William Seidman, Esq.*, for the petitioners.

*John A. Clark, Esq.*, for the respondent.

## OPINION.

MURDOCK, *Judge:* Section 711 (b) (1) (J) is entitled "Abnormal Deductions" and it provides, in (ii), that deductions which were normal for the taxpayer but exceeded 125 per cent of the average amount of similar deductions for the four previous years shall be disallowed in an amount equal to the excess, in computing the excess profits net income for any base period year. Section 711 (b) (1) (K) (i) allows the alleged excessive deduction to be compared with 125 per cent of similar deductions for the subsequent four taxable years where the alleged excessive deductions came in the first year of a taxpayer's existence. Each petitioner claims that its deduction for depreciation for its first fiscal year, 1937, was abnormal in amount under those provisions. Their contentions are mathematically correct. However, it does not follow that the excess is to be eliminated.

Congress used the base years in an effort to get a true picture of the normal earnings of the taxpayer during a prewar period for comparison with the income of the excess profits tax year, and it was striving, through section 711 (b) (1) (J) (ii), to eliminate any deductions which would distort the true picture of the normal earnings for that base period. The Ways and Means Committee of the House said that the success or failure of this provision and others like it "depends, to a considerable degree, upon its intelligent and sympathetic adminis-

tration." Ways and Means Committee Report No. 146, 77th Cong., 1st Sess., p. 2. Congress could not have intended to distort the total base period income so that it would not represent normal income for that period by disallowing a part of the total deductions for depreciation taken during that period where those deductions are the exact amount which should be recovered tax free from the income earned during the period.

The life of the cabs and meters of these petitioners, with which they started business on March 1, 1936, is conceded to have been four years, and the income of that period can not be reflected properly unless the petitioner is allowed to recover the full cost of that equipment tax free during those years. There are various acceptable ways of accomplishing that result. The petitioners chose a method using declining rates, that is, they claimed a large deduction for the first year and smaller deductions during the three succeeding years. The Commissioner allowed the deductions shown in the findings. The evidence indicates that the declining rate method was used because the value of a new cab shrinks most in the first year and least in the last year of its life. No fault is found with that method of determining "a reasonable allowance for exhaustion, wear and tear (including a reasonable allowance for obsolescence)" of the cabs and meters used in the business. However, it is noteworthy that there would have been no excess under section 711 (b) (1) (J) (ii) if some one of the other acceptable methods, such as a straight line method or one based upon mileage or upon receipts, had been used. The declining rate method would usually tend to create an excess where the life of the depreciating asset is approximately four years but cases can be imagined where the use of that method might distort the normal base period income. Nevertheless, here the life of the assets coincides exactly with the base period and the method used clearly reflects normal income for that period whereas a disallowance of a part of the deduction would enlarge that income beyond what it should be for the purposes which Congress had in mind. The petitioners exhausted their cabs and meters during the four base years in earning their incomes for those years and from their gross receipts they deducted the cost of that equipment in order to reflect their true income from the use of the cabs over their 4-year lives. The normal income of the petitioners for that period would not be clearly reflected if any part of the total deductions for depreciation of the cabs and meters properly deducted during those years as a part of the actual expense of earning that income were to be disallowed.

Section 711 (b) (1) (K) (ii) provides that no disallowance of deductions shall be made unless the taxpayer establishes that the "excess is not a consequence of  *  *  *  a decrease in the amount

of some other deduction in its base period." The deductions for depreciation of those cabs for the subsequent three years of the base period were each "some other deduction in its base period." The deductions for depreciation allowed for each of the four base period years of these petitioners were part of an integral plan, were interdependent, and were mutually consequential. All four years had to be considered in formulating the plan in the first place in order to make sure that during that period the entire cost, but no more than the entire cost, would be recovered tax free through depreciation deductions. The method used was to take 45 per cent the first year, 25 per cent the second year, 20 per cent the third year, and 10 per cent the fourth year. If a different plan had been selected, using a different figure for any one of the four years, a compensating change in the deduction for one or all of the other three years would have been required. Thus, the deduction taken in each year was a consequence of an integral plan involving, as components, the deductions for the other years, and each deduction was dependent upon and a result of the other. If any one was large, that was a consequence of smaller ones being taken in other years. So the excess of the 1937 deduction over 125 per cent of the average deductions for the four subsequent years in the case of each taxpayer was a consequence of a decrease in the amount of the other three deductions for depreciation within the meaning of section 711 (b) (1) (K) (ii) and the excess may not be disallowed.

The petitioners cite and rely upon our decisions in *R. C. Harvey Co.*, 5 T. C. 431, *Pacific Gas & Electric Co.*, 7 T. C. 1142, and *Consolidated Apparel Co.*, 17 T. C. 1570, in which the words "a consequence of" as used in section 711 (b) (1) (K) (ii) were interpreted. The facts in those cases are not like the facts in the present case, the cases are not controlling here, and the holding in this case is not inconsistent with the holdings in those cases.

*Decisions will be entered under Rule 50.*