J. H. COLLINGWOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. H. COLLINGWOOD AND MARGARET E. COLLINGWOOD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 32482, 32483.   Promulgated September 4, 1953.

*Willard N. Van Slyck, Jr., Esq.,* and *Clayton E. Kline, Esq.,* for the petitioners.

*Everett E. Smith, Esq.,* for the respondent.

938

### OPINION.

HARRON, *Judge:* The respondent disallowed deduction of the cost of farm terracing in each of the taxable years upon his determination that the expense comes within section 24 (a) (2), Internal Revenue Code.[1] The respondent contends that the farm terracing work in question constituted a permanent improvement. He does not, under his theory, agree that the cost of the farm terracing can be recovered through depreciation.

The petitioner contends that the terracing work was, essentially, for maintenance and conservation of the farms. He denies that the farm terracing work constituted a permanent improvement or betterment within section 24 (a) (2).

It is not disputed that the farms in question were held for the production of income.

Although the question here is concerned with the farm lands, the posture of the question by the parties is the same as in the many cases where the cost of work on industrial property has been considered. Respondent refers to Regulations 111, section 29.24–2, and to the principles set forth in *Illinois Merchants Trust Co.*, 4 B. T. A. 103, 106.

Whether an expenditure on a piece of property is one which may properly be "expensed" rather than capitalized is often difficult to determine. In the now leading case, *Illinois Merchants Trust Co.*, *supra*, several tests were suggested, which are quoted below, and it was emphasized that "it is necessary to bear in mind the purpose for which the expenditure was made":

To repair is to restore to a sound state or to mend, while a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate, \* \* \*.

in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings. * * *

This Court, in applying the above principles, has held that expenditures on property which have been rather large in amount, which were for the purpose of overcoming and correcting a physical fault in land such as "cavitations in the overburden" which caused cave-ins of the land and structures above the cave-ins, *American Bemberg Corporation*, 10 T. C. 361, affirmed per curiam 177 F. 2d 200; and the seepage of water and other liquids through the earth into buildings, *Midland Empire Packing Co.*, 14 T. C. 635; *Farmers Creamery Co. of Fredericksburg, Va.*, 14 T. C. 879, were essentially in the nature of repairs rather than improvement or replacement. We conclude that the expenditure in question here, for moving earth into ridges and channels to overcome the condition of water erosion which developed in petitioner's five farms after they had been in cultivation for a long time was no more capital in nature than were the expenses in the *American Bemberg*, *Midland Empire*, and *Farmers Creamery* cases, *supra*.

The facts have been set forth at length and need not be restated. First, it is noted that the expense in question was not for the development of the farm lands "prior to the time when the productive state" was reached, and, therefore, was not a development expense which must be regarded as investment of capital under section 29.23 (a)–11 of Regulations 111. The terracing of the farms was not done for the purpose of converting them to some new use, or to any use which was different from the use during the years prior to 1947, to which the farms had been devoted. Nothing new was added to the farm lands of a structural nature; the erosion control terraces, consisting of ridges and channels, were simply the earth in place on the farms which was plowed, graded, and pushed to follow the natural contour lines of the farms which had long been farmed to wheat, grains, soy beans, and clovers. The same crops were raised on the farms after the terracing work was done as before. Nothing was added to the soil. No new farming areas were developed; and no clearing of the land or work to prepare land for cultivation was done. The terracing work did not change the fertility of the soil, or make farming operations easier. The terracing did not increase the value of the land or its products.

The evidence shows that the terracing work was done for the purpose of preventing or checking further gullying of the land by water

erosion, and further loss of top soil from the rapid run-off of water downgrade. The evidence as a whole establishes, in our opinion, that the terracing of the five farms was done in the taxable years for the purpose of maintaining them in an ordinarily efficient condition for the carrying on of the kind of farming which had been followed before the terracing was done; and was for the purpose of preserving the normal productivity of the farm lands. Expenditures for such purposes are not capital in their nature.

The "fault" in the land to overcome which the expenditures for terracing were made was water erosion.[2] Such erosion occurs with unpredictable variations in intensity depending upon weather conditions. Since petitioner's farms were subject to water erosion, the terracing work was, in itself, subject to the variations in weather conditions, and is not permanent. Petitioner called two witnesses who are experts in the work of controlling water erosion, men who have had 20 to 30 years' experience in the work. Respondent did not call any witnesses, and he did not offer any countervailing evidence. The evidence as a whole, including the opinions of the expert witnesses, establishes that the expenditures in question were not for improvements, replacements, or permanent improvements.[3] On the other hand, the evidence shows that the expenditures were in the nature of repairing land which was eroded so as to maintain it in a way which would be as nearly free from the defects caused by erosion as possible. We conclude, therefore, that the cost of terracing was in the nature of repair and maintenance expense, and hold that it is deductible as an ordinary and necessary business expense under section 23 (a) of the Code.

With respect to the amount of the expense in each of the taxable years, and in 1947, in particular, we observe that four farms covering from 125 to 160 acres, and one farm covering 320 acres were involved in each year. Petitioner did not present a breakdown of the cost per farm of the work in each year, but we understand that the cost per farm was in proportion to the acreage of each farm. So viewed, the expense per farm in each year was not so large as to be inconsistent with a repair and maintenance expense in view of the circumstances; compare *American Bemberg* and *Midland Empire, supra.*

---

[2] There are two main types of water erosion, "sheet erosion" and "gully erosion." Sheet erosion is defined as "the removal of surface soil in fairly uniform layers or sheets," while gully erosion is "the removal of soil at points of excessive water concentration where relatively deep ditches are cut into the surface." The intercepting channels of a terracing system "break long slopes into short segments and thereby provide low-velocity surface drainage, which materially reduces the amount of top soil that can be carried down the slope or from the field by surface run-off." C. L. Hamilton, "Terracing For Soil and Water Conservation," United States Department of Agriculture; Farmers Bulletin 1789, Rev. April, 1943, p. 3.

[3] One witness observed: "You can move a pile of dirt but you can't keep the weather from moving it again."

We have considered all of the cases cited by the respondent, many of which were decided by this Court in unreported memorandum reports. Respondent has not cited any decision which squarely supports his view.

*Decisions will be entered for petitioners.*