Isadore BISCOW and Peggy Biscow,
Plaintiffs,

v.

UNITED STATES of America,
Defendants.

No. 1880.

United States District Court
E. D. Virginia, Norfolk Division.

April 13, 1956.

P. A. Agelasto, Jr., Norfolk, Va., for plaintiffs.

L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., Robert E. Manuel, Trial Section of the Tax Division, Dept. of Justice, Washington, D. C., for defendants.

HOFFMAN, District Judge.

This is an action instituted by plaintiffs to recover income taxes paid for the calendar year 1949 pursuant to a deficiency assessment and a subsequent denial of a claim for refund. The plaintiff, Peggy Biscow, is a party by reason of having filed a joint return with her husband, Isadore Biscow. The controversy arises from the disallowance, as a deductible loss, of the undepreciated cost of a certain building acquired in

1945 by a partnership composed of Isadore Biscow and James Fox, the building thereon having been demolished in 1949 to provide parking space for a modern restaurant erected by the partnership.

Under a special inquiry submitted to the jury it was determined that, at the time of purchase in 1945, the partnership had *no* then intention of demolishing the buildings and improvements thereon for the purpose of erecting another building in its place. The verdict of the jury is amply supported by the evidence and its finding is approved.

Submitted by agreement to the Court is the issue of the effect, if any, of an after-acquired intention (not existing at the time of purchase) to demolish, coupled with the erection of the restaurant building at approximately the same time, with the partnership claiming a demolition loss during the year of removal.

The partnership acquired by purchase, in 1945, lots 1, 2 and the southern ½ of 3, in block 69, plat 3, of the property of the Virginia Beach Development Company for the sum of $41,500. The land is located on the ocean front a total frontage of 125 feet and running back a distance of 150 feet to the main street in the City of Virginia Beach. Situated on lot 1 at the southern or 28th Street corner of the property was a frame building used, at the time of sale, as a rooming house. The partnership immediately proceeded to convert the building into a small Italian type restaurant which was leased during the year 1946 at a gross rental of $4,400, during the year 1947 at a gross rental of $2,000, and during the year 1948 at a gross rental of $1,500. It was apparent that, for the years 1947 and 1948, the expenses such as taxes, interest and insurance, were in excess of the gross rental received. During the latter part of 1948, the partnership concluded to erect a modern type restaurant with suitable parking facilities. In 1949 the new building was erected on lot 2 and the southern ½ of 3, and, at the same time, the old building on lot 1 was de-molished and ultimately converted into a parking lot.

■ There is no merit to plaintiffs' contention that, because the structures were not on the identical lots, one building did not replace the other. All lots were acquired under one deed, the property was treated as one unit, and the intention of the parties was clear in that respect.

■ The determining question is in the construction of Regulation 118, § 39.23(e)–2, as set forth under § 23 of the Internal Revenue Code of 1939, 26 U.S.C.A., reading as follows:

"Reg. 118, § 39.23(e)–2

*"Voluntary Removal of Buildings*

"Loss due to the voluntary removal or demolition of old buildings, the scrapping of old machinery, equipment, etc., incident to renewals and replacements is deductible from gross income. When a taxpayer buys real estate upon which is located a building, which he proceeds to raze with a view of erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and building plus the cost of removing the useless building."

The first impression from a casual reading of the foregoing Regulation would lead one to believe that the controlling date with respect to the determination of an intention is the date of purchase of the property. If this is the sole consideration herein, plaintiffs are entitled to prevail.

There is some authority tending to support plaintiffs' view. Memorandum of Nelson T. Hartson, Solicitor of Internal Revenue (1924), Internal Revenue Cumulative Bulletin III–2, p. 112; Watson v. Commissioner, 15 B.T.A. 422

(involving the razing of a residential building in 1922, purchased in 1919, adjacent to property previously acquired for commercial use); Burwig v. Commissioner, Docket No. 37227, Tax Court Memorandum Decisions (CCH), Vol. 12, p. 1197 (October 27, 1953). In the last cited case it will be noted that the Court states:

"Under such conditions the removal of the improvements not being a part of the plan for construction of a new building gives rise to a loss deductible in the year in which the building was razed or disposed of."

As the removal of the building in the present case was unquestionably a part of the plan for the construction of a new building, it perhaps could be successfully urged that Burwig, supra, is authority supporting the defendant's contention herein.

In Chesbro v. Commissioner, 1953, 21 T.C. 123, affirmed 225 F.2d 674, the demolition loss was allowed as the building in question could not be made to comply with the requirements of the Buffalo Fire Department and the corporation, as an alternative, demolished the building and converted same into a parking lot. The intention to demolish was, in effect, created by reason of conditions beyond the control of the taxpayer and the loss was properly allowable during the year of demolition.

The dicta in Providence Journal Co. v. Broderick, 1 Cir., 104 F.2d 614, 616, clearly supports plaintiffs' argument where it is said:

"The intention at the time of the purchase fixes the nature of the transaction. The taxpayer here desired to buy a certain lot for the erection of a new building. To get the lot it was necessary to take the buildings on it. After the land had been cleared, at the commencement of the new construction which the taxpayer had in view from the beginning, the lot stood the taxpayer the cost of the land and buildings plus the cost of removing the then useless buildings."

If the intention at the time of purchase fixes the nature of the transaction *in all cases*, irrespective of intentions thereafter formed involving removal with a plan for construction of a new building, it would be unnecessary to consider the matter further. If the provisions of the Regulation in question exclude by implication cases where the taxpayer has no such intention at the time of the acquisition of the property, there would be no problem. But this contention has been expressly refuted in Commissioner v. Appleby's Estate, 2 Cir., 123 F.2d 700, 702, in which Judge Swan, speaking for the Court, has this to say:

"No decision has been called to our attention which has accepted this construction of the regulation, and it has been expressly repudiated in at least one case. Young v. Commissioner, 9 Cir., 59 F.2d 691, 692. See, also, Anahma Realty Corp. v. Commissioner, 2 Cir., 42 F.2d 128. The regulation under discussion states the rule to be applied in a common situation, namely, the purchase of improved real estate with the intent to raze the old improvements and rebuild. It would be unreasonable to hold that the statement of a rule for this single instance excludes application of a similar rule to cases where the intent to raze and rebuild was formed after the property was acquired. Losses are recognized only when they result from a closed transaction. If a building is demolished because unsuitable for further use, the transaction with respect to the building is closed and the taxpayer may take his loss; but if the purpose of demolition is to make way for the erection of a new structure, the result is merely to substitute a more valuable asset for the less valuable and the loss from demolition may reasonably be considered as part of the cost of the new asset

and to be depreciated during its life, as is a broker's commission for negotiating a lease. Central Bank Block Ass'n v. Commissioner, 5 Cir., 57 F.2d 5; Bonwit Teller [&] Co. v. Commissioner, 2 Cir., 53 F.2d 381, 82 A.L.R. 325. The cases which have dealt with the regulations under discussion are not out of harmony with this view. Providence Journal Co. v. Broderick, 1 Cir., 104 F.2d 614; Spinks Realty Co. v. Burnet, 61 App.D.C. 321, 62 F.2d 860; Young v. Commissioner, 9 Cir., 59 F.2d 691; Anahma Realty Corp. v. Commissioner, 2 Cir., 42 F.2d 128; Liberty Baking Co. v. Heiner, 3 Cir., 37 F.2d 703; cf. Union Bed & Spring Co. v. Commissioner, 7 Cir., 39 F.2d 383."

Adopting the rule that "losses must result from a closed transaction", it is abundantly clear that, at the time of demolition herein, the transaction was not "closed". The taxpayers must capitalize their investment and depreciate the same during its life. While plaintiffs endeavor to distinguish the Appleby case by suggesting that the property was not used in the taxpayer's business, reference to this statement pertains to another point in the case.

Apparently this question has not heretofore been decided in this Circuit. The nearest approach to the problem is in Lynchburg Nat. Bank & Trust Co. v. Commissioner, 4 Cir., 208 F.2d 757, but Judge Soper, speaking for the Court, did not pass upon the statement of the Court below (20 T.C. 670, 673) where it is said that "the original intention is the determining factor". There, again, we have the "common situation" involving an intention at the time of acquisition which does not preclude consideration of the problem presented by a later intention to demolish coupled with a simultaneous intention to rebuild.

The Tax Court has passed upon this problem in Phipps' Estates v. Commissioner, 1945, 5 T.C. 964, wherein Appleby is cited with approval. In Phipps, counsel for the now plaintiffs point out that the new building was erected on the site of the demolished building. This is a distinction without a difference when the area is treated as one unit. Even where buildings were not torn down until three years after the new building was erected, it has been held that no loss was deductible. Acacia Mutual Life Ins. Co., B.T.A. Memorandum Opinion, Dec. 8621–B. The comment of text writers appears to support the Appleby viewpoint as is indicated in Standard Federal Tax Reports, CCH, 1955, Vol. 1, § 1533.012, p. 18,146, as follows:

"But where the intent as to removal is indefinite, or the decision to remove and replace the building is made at some later date, the courts hold that the undepreciated basis of the old building, plus the cost of removal, becomes a part of the cost of the new building. * * * It is only where the purchased building or improvement is removed and the land used without further improvement or replacement that the 'loss' has been considered to be deductible."

No violence is done to require a taxpayer to capitalize his investment and depreciate his property over a period of years. He is still entitled to a legitimate deduction. The soundness of the rule in Appleby, supra, is clear.

█ Counsel for defendant will prepare a judgment order in accordance with this opinion which is adopted by the Court as its findings of fact and conclusion of law. Judgment will be entered for the defendant but, as the plaintiffs prevailed on the initial issue submitted to the jury, which was vigorously contested by defendant, the costs of this proceeding will be equally divided.