RKO THEATRES, INC., Successor by Merger of Keith Memorial Theatre Corporation,

v.

UNITED STATES of America.

No. 333–56.

United States Court of Claims.
July 16, 1958.

Sheldon J. Gitelman, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Lyle M. Turner, Washington, D. C., Charles H. Magnuson, Seattle, Wash., and June A. Murray, Washington, D. C., were on the briefs.

REED, Justice (Retired), sitting by designation.*

Following a tragic fire that happened in 1942 at a night club, the Cocoanut Grove, in Boston, the Commonwealth of Massachusetts enacted, in 1943, a statute providing for inspection and licensing of buildings of public assembly. Prior to that time the City of Boston granted such licenses under its safety code. Thereafter, by section 4 of Chapter 544 of the Acts and Resolves of the General Court of Massachusetts, licensing authority was given to the State Commissioner of Public Safety.

After the passage of the State legislation, the petitioner's predecessor, Keith Memorial Theatre Corporation, was advised by the Commissioner that no future license would be granted unless the seating capacity of the theatre was reduced or new exit facilities and fire escapes were installed. The latter alternative was chosen and the necessary changes were made in the theatre at an aggregate cost of more than $60,000 in 1944 and 1945.

Petitioner's return asserted a deduction for the construction expenses. The Commissioner of Internal Revenue disallowed it upon a determination that it was a capital expenditure. The deficiency was duly paid and this suit filed.

Petitioner claims, first, the cost of these changes as a trade or business expense under Section 23(a) (1) (A) of the

Harry Levine, New York City, for plaintiff.

* Keith Massachusetts Corporation v. The United States, No. 332–56, also a claim by a Massachusetts theatre to treat costs for required changes in structure as a deductible expense, is ruled by this opinion and a similar order will be entered. The only legal difference from the facts in the two cases is that in the Keith case improvements were put upon a leasehold with more than a year to run instead of a fee, as in the present case. We do not see that this difference in title affects the problem of whether the cost was a capital investment or an allowable expense.

Internal Revenue Code of 1939,[1] and, second, "that the property demolished and made useless by the work done exceeded in value the expenditures ordered capitalized by defendant."[2] Therefore the property values necessarily demolished by the required changes should be set off as an uncompensated loss.

The first claim as to business expense is based on the fact that $59,511.09 was spent in 1944 and $5,062 in 1945 upon the theatre property to provide proper exits required by the Commissioner of Safety. The details appear in Findings of Fact 8. These changes did not contribute to the efficient operation or attractiveness of the theatre or extend its useful life. See Finding 12.

*First.* Petitioner supports its argument that these expenditures were deductible business expenses under section 23(a) (1) (A) of the 1939 Code by reference to cases that, while bearing on the application of the Trade or Business Expenses Section, do not touch upon the classification problem, as between business or capital expenses, section 24(a) (2), 26 U.S.C. § 24(a) (2), see note 6, *infra,* for structural changes to meet governmental safety requirements. The language of the cases relied upon must be read in the light of the problem presented. For example, in Union Pacific R. Co. v. United States, 99 U.S. 402, 25

L.Ed. 274, an excerpt of which is quoted by plaintiff[3] to support its argument that the present structural changes were not capital, the question was whether net earnings, five percent of which was to be paid on the indebtedness to the United States, were to be determined before or after deducting from gross earnings of "expenditures for station buildings, shops, &c." They were held deductible, as a matter of good business practice in such a case, not as a legal conclusion such as is required under section 23. See pages 420–422 of 99 U. S. Actually the words quoted by petitioner seem to limit expenses to maintenance of "good condition and repair," although the Supreme Court did consider in that case large improvements could be charged to income.

Plaintiff cites Illinois Merchants Trust Co., 4 B.T.A. 103, as a leading case in the capital versus ordinary expense controversy. There piles under a building rotted when exposed by recession of a water level. They were treated or replaced. The cost of repair was held to be an expense deduction for income taxation.

Plaintiff also relies on American Bemberg Corporation, 10 T.C. 361, affirmed without opinion, 6 Cir., 177 F.2d 200. There expensive foundation reconstruction was necessitated by previously un-

---

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
   "(a) Expenses.
   "(1) Trade or business.
   "(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.
   * * *."

2. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
   *   *   *   *   *   *   *
   "(f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 23.

3. Theoretically, the expenses chargeable to earnings include the general expenses of keeping up the organization of the company, and all expenses incurred in operating the works and keeping them in good condition and repair; whilst expenses chargeable to capital include those which are incurred in the original construction of the works, and in the subsequent enlargement and improvement thereof. 99 U.S. at page 420, 25 L.Ed. 274.

known subsurface weakness. The expenditures caused no improvements of efficiency or extension of life for the plant. The cost was held an ordinary and necessary expense. The same result was reached in Kansas City Southern Railway Co. v. United States, 112 F. Supp. 164, 125 Ct.Cl. 287, also cited by plaintiff, where piles were necessary to shore up the railway tracks along a river bank when it was softened by water pockets and mudheaves.

Midland Empire Packing Co., 14 T.C. 635, apparently comes nearer to supporting plaintiff's position than any other cited. There the court approved a business expense deduction when the taxpayer was compelled to line its concrete walled cellar storage room for meats with additional concrete to exclude damaging oil seepage from a nearby refinery under threat from Federal meat inspectors to oilproof the cellar or shut down the plant. The life or value of the building was not increased by the lining. Page 641. It was held the repairs were made in order that the taxpayer might continue to operate the plant. Since no new construction or equipment was added, the court held the facts called for the application of the holding in the Illinois Merchants Trust Co. case.[4]

Since the decision of the Midland case, a case much closer on its facts to this case has been decided.[5] In order to operate, the taxpayer was required by Trenton's Building Inspector to construct a fire passageway to the street. It eliminated certain theatre conveniences.

It was held:

"The petitioner first contends that the cost of the construction and installation of the fireproof fire passageway was a charge against income for 1947 because unless the expenditure had been made the Capitol Theatre would have had to close in that year, and also, that the expenditure was made for the purpose of keeping the theatre property in good and ordinarily efficient operating condition. It contends further that the new passageway decreased the value of the theatre and the possibilities for its profitable operation rather than improving and bettering the theatre.

"We do not agree with the petitioner. The fire passageway represented a permanent addition to the theatre property to give it an additional safety facility for the safe exit of its patrons from the balcony to an open area or a street. It was ordered by the city of Trenton. It was an improvement or betterment having a useful life of more than the year in which it was constructed and which depreciates over a period of years." 13 TCM at page 551.

■ The Government and the cases admit the difficulty of differentiating in many instances between "ordinary and necessary expenses" on one hand, and, on the other, amounts "paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."[6] The finding against the taxpayer by the Commissioner is presumptively correct.[7]

---

4. Pointing a wall to preserve a building for its useful life was held, citing the Midland Empire case, a business expense. City Nat'l Bank v. Commissioner, 11 T. C.M. 411; likewise as to cushioning or resurfacing a racetrack, Delaware Steeplechase and Race Assn., ¶ 50,245 P–H TC Memo; likewise Collingwood v. Commissioner, 20 T.C. 937, terracing land in cultivation. "Nothing was added to the soil. No new farming areas were developed; and no clearing of the land or work to prepare land for cultivation was done. The terracing work did not change the fertility of the soil, or make farming operations easier. The terracing did not increase the value of the land or its products." Id., 20 T.C. at page 942.

5. Trenton-New Brunswick Theatres Co. v. Commissioner, 13 T.C.M. 550.

6. Internal Revenue Code of 1939, sec. 24 (a) (2); cf. Hotel Kingkade v. C. I. R., 10 Cir., 180 F.2d 310, 312.

7. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212.

Besides the New Brunswick Theatre case there has been Hotel Sulgrave, Inc., v. Commissioner, 21 T.C. 619. There the City of New York required a sprinkler system to be installed in an apartment house. No additional income or other advantage was realized from the installation. The court said:

"We do not agree that the installation of the sprinkler system constituted a repair made 'for the purpose of keeping the property in an ordinarily efficient operating condition.' Cf. Illinois Merchants Trust Co., 4 B.T.A. 103, 106, cited by petitioner. It was a permanent addition to the property ordered by the city of New York to give the property additional protection from the hazard of fire. It was an improvement or betterment having a life extending beyond the year in which it was made and which depreciates over a period of years. While it may not have increased the value of the hotel property or prolonged its useful life, the property became more valuable for use in the petitioner's business by reason of compliance with the city's order. The respondent did not err in determining that the cost of this improvement or betterment should be added to petitioner's capital investment in the building, and recovered through depreciation deductions in the years of its useful life. International Building Co., 21 B.T.A. 617, 621, and cases cited therein; Difco Laboratories, Inc., 10 T.C. 660, 669."

Accord: George Haiss Mfg. Co., ¶ 57,-241 P–H Memo T.C. See also Mt. Morris Drive-In Theatre, 25 T.C. 272.

■ In the present case, the taxpayer decided to comply with the construction necessary to meet the requirements for safety. The additions and changes were not in any sense a repair or replacement of existing facilities. They were permanent changes designed to make it possible to carry on a business for profit. They were ordinary and necessary expenditures in the sense of a normal reaction of an owner to a governmental safety requirement for the operation of a profitable business. Cf. Deputy v. Du Pont, 308 U.S. 488, 494–497, 60 S.Ct. 363, 84 L.Ed. 416. But putting in fireproof doors in masonry walls, reconderground passageway are not the "ordinary and necessary expenses" of carrying on a business that allows a deduction structing fire escapes, and closing an unfrom income for tax purposes under 26 U.S.C. § 23 of the 1939 Code. This was not a repair, "a substitution of new parts or restoration of certain parts of a given whole," [8] but a capital improvement made to increase the value of the property for use in the taxpayer's theatre business. Cf., Hotel Sulgrave, supra.

*Second.* Petitioner argues also for a set-off against any disallowed expenditures of the depreciated cost, $47,000, of the portion of the theatre property demolished or made useless by the required improvements. See Commissioner's Report, ¶ 11. There is an allegation in the petition referring to this destruction of values but apparently no claim was made to the Commissioner of Internal Revenue. See section 3772, I.R.C.1939, 26 U.S.C. § 3772; section 7422, I.R.C.1954, 26 U.S.C. § 7422. The brief of the Government dismisses this claim, summarily, thus:

"The amounts alleged as property demolished or destroyed cannot be deducted pursuant to Section 23(f) of the Internal Revenue Code of 1939. * * * Those amounts constitute the cost of making the structural changes pursuant to state authority. Therefore they are includible as part of the capital investment and cannot be set off against such expenditures."

■ Where realty is bought for the purpose of building a new plant or enlarging the old, the value of any buildings demolished to erect others is not a

8. Red Star Yeast & Products Co., 25 T.C. 321, 349.

deductible loss.[9] The same is true as to a lessor, when a lessee removes existing structures to erect a new building. The value of the existing property continues as a part of the cost of the new construction.[10] It is to be capitalized and amortized. The same rule has been applied when the demolition is determined upon after acquisition.

"If a building is demolished because unsuitable for further use, the transaction with respect to the building is closed and the taxpayer may take his loss; but if the purpose of demolition is to make way for the erection of a new structure, the result is merely to substitute a more valuable asset for the less valuable and the loss from demolition may reasonably be considered as part of the cost of the new asset and to be depreciated during its life, as is a broker's commission for negotiating a lease." [11]

We think the same rule should be applied here. The ownership of the theatre by petitioner is not a completed transaction. The depreciated value before the additions, plus the cost of the additions, when depreciated will restore the entire cost to the owner. It is not a repair of a fixture or wall, damaged by accident or natural forces. There is an addition of facilities to meet safety requirements made for the purpose of increasing the value of the property for use as a theatre. This we hold is a capital improvement.

Judgment shall be entered for the United States.

JONES, Chief Judge, and LARAMORE, MADDEN, and LITTLETON, Judges, concur.

9. Liberty Baking Co. v. Heiner, 3 Cir., 37 F.2d 703; Providence Journal Co. v. Broderick, 1 Cir., 104 F.2d 614.

10. Anahma Realty Corp. v. C. I. R., 2 Cir., 42 F.2d 128; Young v. C. I. R., 9 Cir., 59 F.2d 691; Spinks Realty Co. v. Burnet, 61 App.D.C. 321, 62 F.2d 860.

11. Commissioner of Internal Revenue v. Appleby's Estate, 2 Cir., 123 F.2d 700, 702. See also CCH Standard Federal Tax Reporter (1955), p. 18, 146; Biscow v. United States, D.C., 139 F.Supp. 775.