**WOOLRICH WOOLEN MILLS**

v.

**UNITED STATES of America,**
**Appellant.**

**No. 13331.**

United States Court of Appeals
Third Circuit.

Argued Jan. 24, 1961.

Decided April 19, 1961.

David O. Walter, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Daniel H. Jenkins, U. S. Atty., William D. Morgan, Asst. U. S. Atty., Scranton, Pa., on the brief), for appellant.

William J. Madden, Jr., Harrisburg, Pa. (William J. Madden, Jr., Harrisburg, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Is the cost of construction of a filtration plant for treatment of waste from a woolen mill made mandatory by a State anti-pollution law deductible as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A)?

That is the primary question presented by this appeal from the judgment of the District Court for the Middle District of Pennsylvania which answered it in the affirmative.[1]

A collateral issue relates to the year or years, in which the deduction, if permissible, may be taken by a taxpayer on an accrual basis. The District Court held the cost of the filtration plant to be deductible in the year when the construction contract was awarded.

The relevant facts, as found by the District Court may be summarized as follows:

Woolrich Woolen Mills, a Pennsylvania corporation, ("taxpayer") has, since 1830, been engaged in the manufacture of woolen goods at Woolrich, Pennsylvania. The manufacturing process results in the discharge, directly into a public stream, of a large quantity of water containing dyes and short woolen fibers in suspension. At all times prior to 1950, taxpayer's woolen mill was operated without a purification plant for the treatment of this waste prior to its discharge into public waters.

In 1945, the Commonwealth of Pennsylvania enlarged the scope and tightened the enforcement machinery of its anti-pollution laws.[2]

On September 28, 1945, taxpayer was directed by the Sanitary Water Board of the Department of Health of the Commonwealth of Pennsylvania to discontinue all discharge of water from its mill into public streams on or before June 1, 1946, or by that date to submit satisfactory plans for treatment of the water so as to eliminate the pollution elements therefrom. Thereafter, taxpayer consulted with various state officials and

1. The Opinion of the District Court is reported at M.D.Pa.1959, 178 F.Supp. 875.

2. Act of May 8, 1945, P.L. 435, Pa.Stat. Ann. tit. 35, § 691.307 et seq.

with engineers of the Sanitary Water Board for the purpose of complying with the Board's directions and subsequently made plans to install a waste disposal plant.

The Commonwealth approved certain plans of taxpayer and on August 16, 1950 it was issued an Industrial Wastes Permit. During 1950, taxpayer entered into a written contract for the construction of a filtration plant. The contract amount, $108,159.02, including a few additional items, was deducted by taxpayer as an ordinary and necessary business expense in computing its taxable net income for the calendar year 1950. The Commissioner of Internal Revenue disallowed the deduction and assessed a deficiency of income tax which taxpayer paid and then brought suit for refund in the District Court which rendered judgment in its favor.

Construction of the filtration plant was completed in 1952. Its design and operation was described fully by the District Court, 178 F.Supp. at page 877, and it is unnecessary to do so here. It is located approximately one-third of a mile from taxpayer's mill. It consists of one building, enclosing a large revolving wheel covered with wire mesh, and a series of open settling tanks. The system has not worked satisfactorily and since 1952 has been in operation less than one-fourth of the time. When not in operation, the waste from taxpayer's mill is discharged directly into public waters with the knowledge and consent of Commonwealth officials. Taxpayer has attempted in good faith to make the plant work and has spent money in addition to that here involved.

The District Court found that "the plant was erected by plaintiff [taxpayer] solely for the purpose of preventing the Commonwealth of Pennsylvania from enjoining * * * the discharge of [waste into public waters] which injunction would have completely halted operation of plaintiff's manufacturing process." 178 F.Supp. at page 877. The District Court further found that "the waste plant is a permanent addition to the plaintiff's mill property constructed in compliance with the order of the Sanitary Water Board of the Commonwealth of Pennsylvania, having a life extending beyond the year in which construction thereon was completed." 178 F.Supp. at pages 877–878.

Taxpayer keeps its books and records on the accrual basis of accounting.

The District Court premised its determination "that the cost of the filtration plant is an ordinary and necessary business expense deductible in full from gross income in the year incurred" on these grounds:

"In the instant case, plaintiff [taxpayer] has been continuously engaged in the manufacture of woolen goods since its organization in 1830. The filtration system, the construction of which is the cause of the expenditure here involved, is completely divorced from the operation of plaintiff's business. Its construction did not improve, better, extend, increase or prolong the useful life of plaintiff's mill property." 178 F.Supp. at pages 879–880.

It is apparent from the District Court's Opinion that it gave great weight to the circumstance that the construction of the filtration plant was made mandatory by State law and thus was essential to preserve the continuation of taxpayer's business. At page 880, 178 F.Supp., of its Opinion, the District Court said:

"The facts here, in my opinion, fit perfectly in the pattern enunciated in Heininger v. Commissioner of Internal Revenue, 7 Cir., 1943, 133 F.2d 567, at page 569, where the court stated:

"'We think that where an expense is incurred which saves the life of a business, even for a time, it is, * * * not only a business expense, but a necessary business expense.'"

Analysis of the factual situation in Heininger discloses that its holding is inapposite on the issue of whether the cost of the filtration plant in the instant case is a deductible business expense, or a non-deductible capital expenditure. In

Heininger there was involved only the question of deductibility of, as [133 F.2d 569] "ordinary and necessary" expenses, legal fees paid in contesting a Post Office Department fraud order against the taxpayer, a dentist conducting a mail order business. Taxpayer there had continued his highly lucrative business during the pendency of two years of litigation seeking judicial reversal of the fraud order, and it was held that the legal fees were a "necessary business expense" because they served to permit the continued functioning of taxpayer's business.

The sum of the Government's position on this appeal is that the filtration plant is a permanent addition to taxpayer's property, having a life of more than one year, and accordingly the cost of its construction is a non-deductible capital expenditure. The Government stresses that the District Court made the fact-finding (Para. 11, Findings of Fact) that [178 F.Supp. 877] "The waste plant is a permanent addition to the plaintiff's mill property * * * having a life extending beyond the year in which construction thereon was completed."

Taxpayer contends first, that the determination of the District Court that the outlay was an ordinary and necessary business expense constituted a finding of fact, fully supported by the evidence, and must be accepted as conclusive by this Court. Second, that the cases support its position that it was an ordinary and necessary business expense because the filtration system is completely divorced from its business; it was erected solely for the purpose of preventing the State from enjoining the operation of the mill; it would not have been erected voluntarily as a matter of wise and prudent management; and it in no wise acted to insulate taxpayer from any possible liability to employees, customers, tenants, or any other person for any possible litigable danger. Taxpayer maintains that the United States is, in essence, asking this Court to hold that an outlay made to *preserve* the value of property is equivalent to one made to *increase* the value of that property.

It must immediately be noted that the District Court's "conclusion" "that the cost of the filtration plant is an ordinary and necessary business expense deductible in full from gross income in the year incurred" is in the nature of an ultimate finding of fact subject to review free of the impact of the "clearly erroneous" rule applicable to ordinary findings of fact. In re Pioch, 3 Cir., 1956, 235 F.2d 903, 905.

The year for which the deduction in the instant case is claimed being 1950, we are called upon to apply the provisions of the Internal Revenue Code of 1939 pertaining to business expenses and capital expenditures.

Section 23 of the Internal Revenue Code of 1939 provides in pertinent part as follows:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

Section 24 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 24, provides in pertinent part as follows:

"§ 24. Items not deductible

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—

* * * * * *

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate * * *."

Taxpayer relies heavily on the case of Slaymaker Lock Company, 1952, 18 T.C. 1001, reversed on other grounds 3 Cir., 1953, 208 F.2d 313, as demonstrating that not every investment in real property must be treated as a capital expenditure. In that case, the Tax Court allowed as a deduction of an ordinary and necessary

business expense the cost of acquiring and renovating an old stone house located on 5½ acres of farm land. It there appeared that shortly after acquisition, in 1944, taxpayer conveyed the property to certain trustees selected by an organization comprised of employees of taxpayer. A trust agreement was entered into which provided for the operation and maintenance of the property for the exclusive use and enjoyment of all employees of taxpayer. Taxpayer's volume of business had increased, during the war years of 1944 and 1945, more than four times over prewar levels and its working force was approximately doubled. It faced stiff competition with other industries in the area as regarded labor and the farm property was acquired, renovated and conveyed to the employees' association to be used for recreational purposes as a means of holding old employees, to attract new employees and to cut down its labor turnover.

The amounts expended to purchase and renovate the property constituted approximately 2.65 per cent of taxpayer's payroll costs for the years 1944 and 1945. The Commissioner contended that the expenditures were capital outlays amortizable over the life of the property. In holding them to be deductible business expenses, the Tax Court, in addition to finding them to be ordinary and necessary, placed emphasis upon the fact that the property was not retained by the taxpayer (and hence any amounts expended did not enhance the value and use of *taxpayer's* property) but rather was conveyed to the employees' association in trust for the employees' benefit. Thus viewed, it is clear that the expenditures were not an investment in taxpayer's property but constituted a contribution to its employees—part of the cost of doing business during the war years—and attributable to labor costs for the years involved. In this context, the Tax Court's statement (18 T.C. 1009) that "the lodge property was located at some distance from the company's plant and had no usefulness in connection with the operation of the plant" is perfectly consistent. The Slaymaker case is inapposite here.

Taxpayer's reliance upon such cases as Midland Empire Packing Company, 1950, 14 T.C. 635, and American Bemberg Corp., 1948, 10 T.C. 361, affirmed 6 Cir., 1949, 177 F.2d 200, is likewise misplaced. Those cases involved outlays of moneys for alterations of existing structures which, on the facts present in those cases, the Tax Court held to constitute repairs. We are not confronted here with a similar situation.

■ Are there present here, then, other considerations which require that taxpayer's expenditure be treated as an item of expense? The involuntary nature of the expenditure, under threat of injunction by the Commonwealth of Pennsylvania, does not render deductible as expense an item which would otherwise be non-deductible as capital. RKO Theatres, Inc. v. United States, 1958, 163 F.Supp. 598, 143 Ct.Cl. 39; George Haiss Mfg. Co., 16 T.C.M. 1106 (1957); Hotel Sulgrave, Inc., 1954, 21 T.C. 619; Trenton-New Brunswick Theatres Co., 13 T.C.M. 550 (1954); International Bldg. Co., 1930, 21 B.T.A. 617; Ben T. Wright, Inc., 1928, 12 B.T.A. 1149; Holt-Granite Mills Co., 1925, 1 B.T.A. 1246.

■ Nor is the fact that the filtration system is, in the words of the District Court (178 F.Supp. at page 880) "completely divorced from the operation of plaintiff's business" dispositive here. While it might be considered "divorced" in a sense of not being a productive part of taxpayer's manufacturing process, it is nonetheless an integral part of the total property which taxpayer devotes to its business. In this sense it is no less "divorced" than a fence, Russel Box Co. v. Commissioner, 1 Cir., 1953, 208 F.2d 452; safety devices in a factory, consisting of railings and shields, George Haiss Mfg. Co., supra; a sprinkler system, Hotel Sulgrave, Inc., supra; fire exists, RKO Theatres, Inc. v. United States, supra; Trenton-New Brunswick Theatres Co.,

supra; or safety devices in an elevator, International Bldg. Co., supra, all of which were held to constitute capital expenditures. It is not "divorced" in the sense that the farm property was divorced in Slaymaker Lock Company, supra.

There remains taxpayer's assertion that "it is self evident that the filtration plant would not have been erected by the taxpayer voluntarily as a matter of wise and prudent management", and, that in the cases cited by the Government, "the expenditure made by the taxpayer resulted in an improvement of the taxpayer's plan [sic] or his operating conditions or, at the very least, eliminated possible liability on the part of the taxpayer to his employees, customers or the public by eliminating a possible danger" and "the accomplishment of any of these things, whether voluntary or involuntary, is a sufficient reason for requiring the expenditure to be capitalized" while in the instant case no such benefit accrued to taxpayer.

In essence taxpayer's contention is that the filtration plant did not enhance the value of its property. We cannot subscribe to this contention. It is inconsistent with the finding of the District Court that "the waste plant is a permanent addition to the [taxpayer's] mill property * * * having a life extending beyond the year in which construction thereon was completed." In our opinion this fact-finding required the District Court to hold that the cost of construction of the waste plant constituted a non-deductible capital expenditure within the meaning of Section 24(a) (2) of the Internal Revenue Code of 1939 and it erred in failing to do so.[3]

For the reasons stated the Judgment Order of the District Court will be reversed and the cause remanded with directions to proceed in accordance with this Opinion.

3. Our holding makes it unnecessary, of course, to discuss the collateral issue as to the year or years in which the deduction, were it allowable as a business expense, could be taken.